## THE CITY OF EUDORA v. EDWARD MILLER.

1. CITIES; *Duty as to Streets; Liability for Damages.* The act incorporating cities of the third class, (Comp. Laws 1879, ch. 19a,) gives to such cities control over the streets, and means to keep them in order; hence, under the general rule concerning municipal responsibility, one is liable in damages to a party injured through its neglect to keep such streets in safe condition. (*Jansen v. City of Atchison*, 16 Kas. 358.)

2. BRIDGE—*Part of Street.* A bridge situated wholly within the limits of a city is, with its approaches, a part of the public streets, and as such within the scope of the city's duties and liabilities.

3. CITY — *When not Released from Duty and Liability.* Proof that such a bridge was in the first instance built by the county does not necessarily release the city from duty and liability; especially when the circumstances and conditions under which the bridge was built, or its size and

cost, are not shown, or that it was not built prior to any incorporation of the city, and while there was no town, village, or other collection of inhabitants in the vicinity. The case of *Comm'rs of Wyandotte Co. v. City of Wyandotte*, 29 Kas. 431, distinguished.

4. CITY, *Not Freed from Duty.* That such a city contains a population of less than six hundred, and forms a part of two road districts in the township, does not free it from duty or relieve it from responsibility.

### Error from Douglas District Court.

ACTION by *Miller* against the *City of Eudora*, to recover damages for injuries to his team of mules, wagon, etc. Trial by the court at the April Term, 1882, and judgment for plaintiff for $160, and costs. The defendant brings the case here. Other facts appear in the opinion.

*W. W. Nevison,* for plaintiff in error.

*Thacher & Barker,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by defendant in error, plaintiff below, to recover damages for an injury to his team on the streets of the defendant. The action was commenced before a justice of the peace, and after trial was appealed to the district court, there tried upon the bill of particulars filed before the justice — tried by the court without a jury — special findings of fact made, and judgment rendered thereon for plaintiff. The defendant alleges error. The testimony is not preserved, so the case comes before us upon the special findings and the bill of particulars. Those findings are as follows:

"I find that on July 8th, 1881, the defendant was a duly incorporated city, under and by virtue of the statute of the Territory of Kansas, passed February 8th, 1859.

"That on that day the plaintiff, whilst passing along a highway in said city, received injury to the amount of $160, which injury was caused by his team backing down upon the approaches to a bridge, situated in said city of Eudora and across the Wakarusa river.

"Said bridge and approaches were erected by the county of

Douglas. The said approach was an earthen embankment about twenty·feet wide at top, and at bridge abutment about fifteen feet in height. It had no guards at its sides, but was left open, by reason whereof the said plaintiff's team backed off from said bridge approach, and was injured to the extent aforesaid.

"That said defendant was by law charged with the duty of keeping its streets and bridges in repair, and neglected its duty in that regard toward the plaintiff.

"That the said city of Eudora forms a part of two road districts in the township of Eudora, of which township said city forms a part.

"The population of the city of Eudora is at this time, and was at and before the happening of the grievance complained of, less than six hundred.

"My conclusions are that the plaintiff is entitled to recover in the action the said sum of $160, with costs."

The defendant being a city of the third class, under the general powers conferred upon such a city, was liable in damages to an individual who suffered injuries from the negligence of the city in keeping its streets in repair. This is the general rule in respect to the obligation of cities. In 2 Dillon on Municipal Corporations, 3d edition, § 789, the rule is thus stated:

"It may be fairly deduced from the many cases upon this subject referred to in the preceding sections and notes, that in the absence of an express statute imposing the duty and declaring the liability, *municipal corporations proper*, having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty."

See also *Jansen v. City of Atchison*, 16 Kas. 358, and authorities cited in opinion.

That ordinarily a city of the third class comes within the rule laid down, and on the authorities quoted cannot be doubted. (See Comp. Laws 1879, ch.19a, § 36, ¶ 2; §§ 57, 45, 9.)

To obviate the liability which.in ordinary cases would thus

·clearly exist, the following facts appear from the findings of the court: That the accident took place on the approaches to a bridge across the Wakarusa river, and that the county of Douglas built said bridge and approaches.

Now as the court found that the city was charged with the ·duty of keeping this bridge in repair, and as the testimony is not before us, the judgment must be sustained, unless from the mere fact that the county of Douglas built the bridge all responsibility on the part of the city was removed. But it ·does not appear when the bridge was built. Perhaps before ·the incorporation of the city, before there was any town, village, or any collection of citizens, in the vicinity of this ·crossing, and when the county was acting simply with regard to the interests of the county as a whole in improving its or-·dinary thoroughfares. (Laws of 1855, ch. 18.) By this statute, whenever the estimated expense of a bridge exceeded .$50, it was to be built by the county, and of course such bridges might be built where afterward towns and cities would :grow up. It could hardly be, if before there was a city ·or any settlement looking toward a city, the county built a bridge, that perpetual liability attached to the county, notwithstanding the growth around that bridge of a large city, .and that through all time the county should have control of ·the bridge, and the city over only the other portions of the public street. So that the mere fact that the county built a ʰbridge, irrespective of the time when it built it, would not necessarily defeat the present duty of the city in respect·to keeping it up, and its present responsibility for a failure so to do. Possibly, too, if all the facts were before us, other ·circumstances might be developed which would tend to show ·that the county by building did not assume the rights of ·ownership and become responsible for the maintenance. Perhaps there was some arrangement between the city and the ·county. Perhaps it was part and parcel of a railroad bridge toward which the county, in payment of stock subscribed, ·contributed.

But it is unnecessary to speculate. It is enough that the

mere fact that the county built the bridge at some time and under some circumstances does not overthrow and destroy the present responsibility of the city, which the court affirmatively finds to exist.   There is nothing in this decision conflicting with the case of *Comm'rs of Wyandotte County v. City of Wyandotte*, 29 Kas. 431, when the facts are fully disclosed. It appeared, or was conceded in that case, that the bridge was built since the incorporation of the city of Wyandotte, was a bridge costing sixty thousand dollars, and was not entirely within the limits of any city, but connecting two cities. Hence it seemed that by virtue of its large investment, made obviously with no purpose of merely improving a country highway, and subject to change upon the subsequent growth and incorporation of a city surrounding the bridge, the county had the rights and was burdened with the liabilities of owner. Neither city could claim control of the bridge, for it was only partially within the limits of either; and unity of control being important, the only place for vesting it seemed to be in the county, the builder, and properly the owner.   But here the bridge may have been but a small affair, costing but a few hundred dollars, built not with a view to ownership, or with any reference to a present or prospective city; built before there was any city, village, or collection of inhabitants, and simply as an improvement of a country highway; built before any of the present statutes were in force, and under the authority of chapter 18, Laws of 1855.

It was not intended by that decision to hold that a city could not improve its streets by the building of bridges, or that its control of them could be assumed by the county at its pleasure.   The general language of the opinion must be construed in reference to the particular facts of the case. When so understood, there will be found no conflict between the two cases.   Of course the fact of the building carries some presumption of ownership and control, and if not overthrown by other findings, might be decisive.   When to that is added the large cost, the size, and the fact that the bridge is not wholly within the limits of one, but the connecting

link between two cities, the continuing ownership and control of the builder, the county, becomes more obvious.

It must also be borne in mind, that the accident did not occur on the bridge, but on the approaches thereto: How near to the bridge is not shown. Now, while ordinarily speaking, the approaches are a part of the bridge, yet the general control by a city over its streets should be carried as far as possible, and when the approach is by a long ascent, that ascent may well be considered a mere part of the street, and within the control of the city, even if the county were chargeable with the maintenance of the bridge proper. Taking all the findings together, we think the conclusion of the district court is not overthrown by the findings of fact.

The other matters which it is claimed absolve the city from liability are, that it formed a part of two road districts in the township of Eudora, and that its population was *less than six hundred*. The argument is, that by § 16 of ch. 89, Comp. Laws of 1879, each incorporated city *of more than six hundred* inhabitants constitutes a separate road district, and by § 4, ch. 19a, Comp. Laws of 1879, cities of the third class, with certain exceptions, remain a part of the corporate limits of municipal townships "for all township purposes, and for the election of justices of the peace, constables, for the purpose of building bridges," etc. From this, it is contended that the road overseers of the two road districts had full control over the streets in the city, and that the township of which the two road districts formed a part, was alone responsible for the maintenance of the streets and bridges. This argument is claimed to be sustained by § 15 of ch. 89, *supra*, which gives to the municipal authorities of any incorporated city power to make such ordinances concerning the sidewalks of the streets as shall be deemed necessary for certain-named purposes. The argument is plausible, but not sound. We lay no stress on the argument made by counsel for the defendant in error, that because by § 4, ch. 19a, *supra*, a city of the third class, having a valuation of not less than $150,000, may become a separate township for all purposes, and as

there was nothing to show that the assessed valuation of this city was less than $150,000, therefore it might be presumed that it had become a separate township; because one of the findings is, that it is still a part of Eudora township. But we rather rest upon the fact that the direct legislation concerning the city vests power in the city to control the streets, and gives it by taxes means therefor. The legislation that is expressly directed to a particular subject matter must be accepted as the controlling legislation as against any inferences or implications that may arise from other portions of the statute. Now the city may remain a part of the township; and when we turn back to the law of 1868 we find the same provision as in § 15, ch. 89, *supra*, and in § 16, same act, a provision that each incorporated city of less than fifteen thousand inhabitants shall constitute a separate road district. Force can be given to the various statutes by giving to the city what the city statute expressly grants, control over the city streets, and by making the city a part of the township, so that the expense of building bridges outside of the city limits and within the limits of the township, shall be cast upon the entire property of the township, including therein the property of the city; and that the road overseers of the various districts shall take charge of the highways outside of the city, leaving to the street commissioner specially authorized by § 8 of said ch. 19*a*, to take charge of the city streets as the agent of the city. This perhaps limits and restricts somewhat the operation of those portions of the statute respecting powers and duties of the road overseers in townships, but it gives full force and effect to the provision of the statute respecting cities of the third class, and does not wholly destroy the scope and operation of any portion of the statutes. Therefore that construction is to be preferred. We think, therefore, that none of the facts found are sufficient to avoid the liability of the city as declared by the district court.

We see nothing else that requires notice, and the judgment will be affirmed.

All the Justices concurring.