THE STATE OF KANSAS v. THE CITY OF CONCORDIA.

No. 15,408.  (96 Pac. 487.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Sewers*—*Nuisances*. The power granted to cities of the second class to build and maintain sewers does not warrant the commission of a public nuisance through their agency.

2. ——— *Same*. The statute of 1887 providing that cities of the second class may exercise the right of eminent domain in order to connect sewers with creeks, rivers and ravines does not warrant the commission of a public nuisance as the result of such connection.

3. ——— *Same*. In planning and in maintaining systems of sewerage cities of the second class must make due provision against public nuisances resulting from occurrences naturally and reasonably to be anticipated.

Error from Cloud district court; WILLIAM T. DILLON, judge. Opinion filed June 6, 1908. Reversed.

*Fred S. Jackson*, attorney-general, *Fred W. Sturges, jr.*, county attorney, *Homer Kennett*, for The State.

*Theodore Laing*, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The state of Kansas brought a suit for an injunction to restrain the city of Concordia from committing a public nuisance by discharging sewage into an abandoned channel of the Republican river lying outside but near the city limits. The material portions of the petition are the following:

"That said defendant for a long time past has discharged and now discharges its sewage and other noxious substances upon premises near or adjoining said city on the north, thereby producing noxious and disagreeable gases and odors injurious and dangerous to the health and lives of the inhabitants of said city, more especially to those in the north portion thereof,

and rendering that portion of the city an unhealthy and unsafe place to live.

"That said sewage and the place where the same is discharged, to wit, the old river-bed, adjoining or near said city on the north, is a public nuisance, to wit, a nuisance to several hundred of the inhabitants of the north part of said city, that the said city has maintained, now maintains, threatens to maintain and will maintain said nuisance unless restrained."

To this petition the defendant filed the following answer:

"The said defendant, for answer to the petition of the plaintiff, says:

"(1) It admits that it is a corporation under the laws of the state and is a city of the second class; that it did at the time this action was begun, and a long time prior thereto, discharge its sewage at a place near to said city on the north thereof; that said place was until the summer of 1903 the channel of the Republican river, but that before the beginning of this action the said Republican river had abandoned this channel at its ordinary stage, except that Wolf creek and Lost creek, two tributaries of said Republican river, have continued to flow therein. The defendant avers that in 1901 the said defendant, being then a city of the second class, by due process of law obtained the lawful right to and did construct a sewer and connect the same with the said Republican river at the place aforesaid, and has ever since maintained the same.

"(2) For further answer the defendant says that it denies each and every averment and allegation in said petition, except as hereinbefore admitted."

The facts stated in paragraph 1 of the answer being true, no reply was filed, and the defendant moved for judgment on the pleadings.

Concordia is a city of the second class. In 1887 the legislature passed an act relating to sewerage and drainage in such cities, section 3 of which reads as follows:

"Such city shall have authority to lay sewer pipes and drains and connect the same with any creek, ra-

vine or river at any point within five miles of the corporate limits of said city; and for this purpose the right of eminent domain is hereby granted to cities of the second class." (Laws 1887, ch. 102.)

Section 4 prescribes the method by which the right of eminent domain granted in section 3 may be exercised, and provides for the payment of damages to any person injured by the laying of pipes or drains to a creek, ravine or river, whether the pipes or drains are laid through his land or he is otherwise damaged.

The district court regarded the sewer connection with the river as a work specifically authorized by the statute referred to, and therefore lawful, whatever the consequences. In deciding the case the learned district judge said: "Where the law by one rule authorizes the city to do what it has done it will not by some other rule of law enjoin it from doing the same thing." Therefore the motion for judgment on the pleadings was sustained, an injunction denied, and judgment rendered against the state for costs.

The allegations of the petition are so general that a question might have been raised if facts and circumstances are pleaded with sufficient certainty to show the city to be guilty of maintaining a public nuisance. However, no motion was made for a more full and definite statement. The defendant treated the petition as setting forth a cause of action for an injunction against a public nuisance, and filed an answer. The district court treated the case as if a nuisance were charged unless the statute legalized what the city had done and was doing. Under these circumstances this court will give the petition liberal interpretation against the city.

The disposal of sewage in a city is frequently a serious problem. It may be practically impossible to devise a system adequate to the needs of the city or within its ability to carry out which will not occasion inconvenience and discomfort to somebody. The mayor

and council must meet the situation as best they can. When their candid judgment has been deliberately exercised and the work has been properly planned and skilfully executed the rights of individuals must ordinarily be subordinated, so far as all incidental disadvantage and loss is concerned. The city is, however, liable for negligence in the plan, construction and maintenance of sewers, as of other public works, and the right to build sewers and drains implies no right to create a nuisance, public or private. In the case of *The City of Leavenworth v. Thomas Casey*, McCahon, (1 Kan., Dass. Ed., 545) 125, the syllabus reads:

"It is the duty of a municipal corporation to build a sewer so that it will not be a nuisance to a neighborhood, as much as it is to avoid the same result by keeping it in repair after it is built."

In the case of *City of Atchison v. Challiss*, 9 Kan. 603, it was said:

"Of course cities have no power, discretionary or otherwise, to create nuisances. And they probably could not abandon or discontinue a sewer or drain so as to leave an individual in a worse condition than if no sewer or drain had ever been constructed." (Page 613.)

In the case of *Gould v. City of Topeka*, 32 Kan. 485, 4 Pac. 822, 49 Am. Rep. 496, the opinion reads:

"A city has no more right to plan or create an unsafe and dangerous condition of one of its public streets than it has to plan and create a public or common nuisance; and it is admitted that it has no right to do this." (Page 490.)

In the case of *King v. City of Kansas City*, 58 Kan. 334, 49 Pac. 88, the syllabus reads:

"In devising a plan of sewerage the municipal authorities of a city are vested with a large legislative discretion, and if it is exercised in good faith the city is ordinarily not liable for incidental injuries to property which are solely attributable to the plan.

"In such cases, however, if, through any negligence

in carrying out the plan or in constructing or maintaining the sewers, the property of a private owner is injured, a liability will arise.

"The collection and precipitation of water or sewage upon the private property of an owner, in such a way as to constitute a direct invasion of the owner's rights and in the nature of a trespass upon his property, will create a liability against the city, regardless of the plan upon which the sewer is constructed."

Such conduct may perhaps be classed as an excess or abuse of corporate power rather than as the negligent exercise of it, but whatever descriptive term may be used the principle is sound, and there can be no doubt but that if the same or similar acts should result in a public and common nuisance instead of a private one merely the public would have the same right to protect itself as an individual... The subject is summed up in volume 2 of the fourth edition of Dillon on Municipal Corporations, in section 1047, as follows:

"Although a municipality having the power to construct drains and sewers may lawfully cause them to be built so as to discharge their refuse matter into the sea, or natural stream of water, yet this right must be so exercised as not to *create a nuisance, public or private*. If a public nuisance is created, the public has a remedy by a public prosecution; and any individual who suffers special injury therefrom may recover therefor in a civil action."

In Joyce on Law of Nuisances, in section 284, it is said:

"Where municipal, *quasi*-municipal and public bodies generally proceed to exercise or do exercise their powers in constructing and maintaining great public works of a sanitary nature, such as a sewerage system, and the question of the extent of or limitations upon their powers has come before the courts, these powers and the rights of the public and of private individuals in connection therewith have occasioned much discussion. But notwithstanding certain decisions not in harmony herewith, it may be stated that even though a municipality or other body has power to construct

and maintain a system of sewers, and although the work is one of great public benefit and necessity, nevertheless such public body is not justified in exercising its power in such a manner as to create by a disposal of its sewage a private nuisance without making compensation for the injury inflicted or being responsible in damages therefor or liable to equitable restraint in a proper case, nor can these public bodies exercise their powers in such a manner as to create a public nuisance, for the grant presumes a lawful exercise of the power conferred and the authority to create a nuisance will not be inferred."

The legislature may authorize many things to be done which create disturbance, annoyance, discomfort and affect health, but which must be endured by private parties unless some constitutional mandate be violated. Thus in *Railway Co. v. Armstrong*, 71 Kan. 366, 80 Pac. 978, 1 L. R. A., n. s., 113, 114 Am. St. Rep. 474, the syllabus reads:

"An authorized business properly conducted at an authorized place is not a nuisance, for whatever is lawful can not be wrongful; and the owner of a railroad, thus authorized and operated, is not liable in damages to one whose residence is permeated by smoke, cinders and gas emitted from the engines to such an extent as to be injurious to the health and comfort of the inhabitants."

As against the public the legislature may go further and direct or permit that to be done free from liability to state prosecution, civil or criminal, which, without the statute, would be a public nuisance. The legislature is the judge of what the public good requires.

In any action attacking what is claimed to be a public nuisance the first question must always be, Has the legislature authorized it? In determining this question certain rules of interpretation are well established. In volume 2 of the third edition of Wood on Nuisances, in sections 757 and 758, it is said:

"An individual or corporation acting strictly within

the scope of legislative power can not be indicted for a public nuisance. The legislative grant is a license to do the act and operates as a complete and full immunity from prosecution, either civilly or criminally, on the part of the public. But it by no means follows that because an act is done under legislative authority the person doing the act can not be punished therefor by indictment if the act creates a public nuisance. If the act is in excess of the power given, or if it is done in a manner not within the reasonable contemplation of the legislature, to be gathered from a fair construction of the grant—as if it is not a necessary and probable result of the exercise of the power given—the act will be no protection against liability, both civilly and criminally. It is only against such consequences as are fairly within the contemplation of the legislature in conferring the authority, and such results as are necessarily incident to its being done—in other words, such results as are the natural and probable consequences of and exercise of the power at all—that the grant operates as a protection. Beyond that it affords no protection whatever. . . . The right given, however, in order to warrant the erection of a public nuisance, must be clearly within the scope of the grant, and must fairly be within contemplation of the legislature in conferring the power."

In Joyce on Law of Nuisances a stricter rule is derived from the decided cases:

"In such cases the statutory sanction necessary to justify such act must be given either, expressly or by clear and unquestionable implication from the powers conferred, so as to show that the legislature intended and contemplated the doing of the very act in question. Such statutes should receive a strict construction, and it will not be assumed that the legislature intended to authorize a nuisance unless this is the necessary result of the powers granted." (§ 72.)

In the case of *Morse v. Worcester*, 139 Mass. 389, 2 N. E. 694, the opinion reads:

"When the legislature authorizes a city or town to construct sewers, or to use a natural stream as a sewer, it is not to be assumed that it intends to authorize the city or town so to construct its sewers, or

The State v. Concordia.

so to use the stream, as to create a nuisance, unless this is the necessary result of the powers granted. On the contrary, if it is practicable to do the work authorized without creating a nuisance, it is to be presumed that the legislature intended that it should be so done. This principle has been recognized and applied in many cases. . . . In the case at bar, the legislature authorized the city of Worcester to use Mill brook as a sewer; by necessary implication, the statute authorized it to empty its sewage into Blackstone river; but we can not presume that it was the intention of the legislature to exempt the city from the obligation to use due care in the construction and management of its works, so as not to cause any unnecessarily injurious consequences to the rights of others. If it is practicable to use any methods of constructing the sewer, and, as a part of the construction, of purifying the sewage at its mouth, at an expense which is reasonable, having regard to the nature of the work and the magnitude and importance of the interests involved, it is the duty of the city to adopt such methods." (Pages 391, 392.)

The opinion in the Morse case cites *Att.-Gen. v. Leeds Corporation*, 5 L. R. Ch. [Eng.], \*583. There an act of parliament was interpreted to authorize the drainage of sewage into a river in such a manner as not to create a nuisance. In deciding the case Lord Chancellor Hatherly said:

"I think the true answer is that which had occurred to us before we called on Sir Roundell Palmer, namely, that when any person finds that the legislature has authorized a work to be done (and, of course, the force of this is increased by the view we have taken, that the true construction of the act is that it is to be done without creating a nuisance), he is not to assume it will create a nuisance. On the contrary, the presumption would be that the board would not do anything unlawful. It is lawful for them to make the sewers, it is lawful for them to conduct the sewage into the river Aire, but they are to do it in such a way as not to create a nuisance." (Page \*594.)

This seems to be a sensible view, and authorities

17—78 KAN.

need not be multiplied. If the legislature authorizes or directs something to be done by a city it will be presumed no nuisance was intended unless such be the natural and necessary result of the work.

The act of 1887 conferred no new power on the city by declaring that it should have authority to lay sewer-pipes and drains and connect them with any creek, river or ravine as an outlet. It had that power without the statute. (10 A. & E. Encycl. of L. 237, *et seq.*) The declaration of the power was made merely for the purpose of attaching to it the right of eminent domain. The obligation to avoid committing a public nuisance was not weakened.

It can not be the law that this act authorizes a city to pour the contents of its sewer mains into any dry ravine it may find convenient to its borders, infect a populous neighborhod with disease, and then, in an action to abate the nuisance, exculpate itself by the simple answer: "The sewers were connected with a ravine." Perhaps some sewage may properly be emptied into a ravine, but manifestly the thought of the statute is that ravines may be utilized for drainage. Cities may lie in close proximity to each other on the banks of a river. It is impossible to believe that one city may empty all the filth of its sewers at the in-take of another city's water-supply and then justify by saying: "The sewers were connected with the river." A city has no right arbitrarily to select the point of out-let for its sewers regardless of the public health and comfort. It may take its sewers to the river, but it must not be indifferent to the very interests to be sub-served in building sewers.

There is nothing unusual about the fact that the water of the Republican river changed to another channel. The valleys of Kansas are filled with chan-nels, old and new, from which the water of the rivers has departed. The effect upon the sewer in question is the same as if a sand-bar had blocked the mouth of

the sewer, dammed up its contents, and caused them to overflow the streets; or as if a bar had formed opposite the mouth of the sewer in such a way as to form a foul and pestilence-breeding basin. In planning and in maintaining any sewer system provision must be made for that which naturally and reasonably may be anticipated.

The petition is such that the court does not know what facts may be relied upon to show that the city is at fault. Assuming that a public nuisance exists, the first count of the answer states no defense.

The judgment of the district court is reversed and the cause is remanded for trial.