Fred Lehmkuhl and Pauline Lehmkuhl, husband and wife, *Appellants*, v. The City of Junction City, a Municipal Corporation, *Appellee*.

No. 40,017

Warren Lehmkuhl and Betty Lee Lehmkuhl, husband and wife, *Appellants*, v. The City of Junction City, a Municipal Corporation, *Appellee*.

(295 P. 2d 621)

Opinion filed April 7, 1956.

*D. Clifford Allison*, of Wichita, and *Robert K. Weary*, of Junction City, argued the cause and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Ray A. Overpeck, Bernard V. Borst, H. K. Greenleaf, Jr.*, all of Wichita, and *U. S. Weary*, of Junction City, were with them on the briefs for the appellants.

*C. L. Hoover*, of Junction City, argued the cause and *Robert A. Schermerhorn* and *A. B. Fletcher, Jr.*, both of Junction City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, C. J.: These are actions for the wrongful death of two young boys. They were consolidated in the trial court and are consolidated here. The pleadings in only one will be referred to

here. The demurrers of the defendant city to plaintiffs' amended petition were sustained. Plaintiffs have appealed.

.The amended petition alleged the residence of plaintiffs; that they were husband and wife and that defendant was an incorporated city; that they were the parents of Paul Ray, about three and a half years old as of September 15, 1952; that about that date and for a considerable time before there existed a hole at a point approximately 100 to 150 feet north of a viaduct on East Sixth Street in defendant city; that it extended north and south of the viaduct in what was at the time of filing the petition the East Street in defendant city in what at that time would have been an extension of East Street, except for the hole; that it was 100 feet wide and was filled with water to a depth of about 18 feet on September 15, 1952; that the defendant city had control of it and had exercised such control for some time; that it was created by the 1951 flood subsequent to the time when the city had acquired control over the area; that about December 18, 1951, the city changed the location of the city dump to the hole just described, all within the city limits, and thereupon trash, junk and debris were dumped into the hole without draining the water therefrom; that the city continued to so use the hole until about February 25, 1952, at which time it was discontinued; that the dump was maintained adjacent to East Sixth Street and in close proximity thereto and by reason of the manner in which the trash, junk and debris were deposited into the hole there was formed across the surface of it a crusty layer of such materials that gave the impression it had a solid substructure, when in fact its substructure consisted of stagnant water, loose trash and junk, and was incapable of supporting any person who might attempt to walk upon it, and was in fact a trap for the unwary who might walk across it; that the hole existed in that condition from about February 25, 1952, until September 22, 1952, and the hole and surrounding area were under control of defendant all that time; that this hole in such condition was extremely dangerous and known to be so by the defendant city, its agents and officials; that despite such knowledge it was allowed to exist in the immediate proximity of a public street and was not posted as being dangerous nor were plaintiffs, their son or the public given any notice as to its dangerous condition, although defendant, its governing body and its officials and agents, knew, or should have known, that persons were frequently in the immediate vicinity of it and were likely to fall

through its false surface and be injured or killed; that on or about September 15, 1952, at a time when the hole was dangerous, Paul Ray Lehmkuhl, a minor child, about three and a half years old, and over whom plaintiffs had always exercised a reasonable degree of parental control, together with Milton Lee Lehmkuhl, about four, did without warning or knowledge of the dangerous condition of the hole walk upon its surface and it collapsed beneath their feet, causing them to fall into the water under the false surface, and drown; that the death of Paul Ray was caused by wanton and careless acts of the city, defendant, and its governing body, officials, agents, servants and employees, in creating the trap alleged; in failing to properly fill or otherwise eliminate it; in failing to erect barriers, guards or fences; in failing to warn the public of its dangerous condition; and in failing to take any precautions for the protection of the public.

The amended petition then alleged damage to the parents for the loss of their son and the making of a claim to the city and its rejection and that the action was brought by plaintiffs as next of kin to decedent and no personal representative had been appointed for Paul Ray.

To this amended petition defendant city demurred on the ground that it did not state sufficient facts to constitute a cause of action. The demurrer was sustained—hence this appeal.

The defendant city argues its demurrer was correctly sustained because the petition showed the hole where plaintiffs' son was drowned was a public dump maintained by the city, which it was doing in its governmental capacity. It points out that a city is not liable for the negligent acts or omissions of its officers when acting in the performance of governmental functions.

There is an exception to this rule. In *Jeakins v. City of El Dorado,* 143 Kan. 206, 53 P. 2d 798, we held:

"Cities of the second class are granted the power to erect and maintain sewers and sewage-disposal plants, but they are not warranted in so operating them as to constitute a public nuisance; if so operated, they are liable in damages to the person or persons injured, it being no defense that such erection, maintenance and operation are in the exercise of a governmental function." (Syl. ¶ 1.)

In that opinion reference is made to a note on the subject of municipal immunity from liability for acts in performance of a governmental function in 75 A. L. R. 1196. We shall discuss that note later in this opinion.

In *Steifer v. City of Kansas City*, 175 Kan. 794, 267 P. 2d 474, we followed and approved the Jeakins opinion.

The next question is whether the amended petition stated a cause of action for a nuisance. Counsel for defendant concedes that since this is a demurrer to a petition all of the allegations must be taken as true and the plaintiff is entitled to a liberal construction and the indulgence of reasonable inferences. In *Jeakins v. City of El Dorado*, supra, the city pointed out there was no allegation of a nuisance in the petition. We said:

"Appellant insists there is no allegation of nuisance in the petition. The word 'nuisance' has been said to be incapable of precise definition. Literally, nuisance means annoyance, and any use of property which endangers life or health, gives offense to the senses, violates the laws of decency or obstructs reasonable and comfortable use of property may be said to be a nuisance. (20 R. C. L. 380, 46 C. J. 645.) That operation of a sewer may constitute a nuisance was recognized in *State v. Concordia*, supra. (See, also, 46 C. J. 723, § 268, and cases cited.) Disagreeable odors were held to be a nuisance in *McMullen v. Jennings*, 141 Kan. 420, 41 P. 2d 753. And the cases holding that pollution of a well or a stream may constitute a nuisance are numerous. (See *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899, 50 L. R. A., n. s. 388; *Lackey v. Prairie Oil & Gas Co.*, 132 Kan. 754, 297 Pac. 679; *Berry v. Shell Petroleum Co.*, 140 Kan. 94, 33 P. 2d 953.) While the plaintiffs did not plead a conclusion and state that the facts alleged constituted a nuisance, they did allege the city had so operated the sewers, sewage-disposal plant and the waste therefrom that the waters in the stream bordering their property were polluted, and an obnoxious and nauseating stench arose therefrom, etc." (pp. 209, 210.)

While the plaintiffs in this action did not use the word "nuisance" in their petition they did plead that the city by dumping debris into the hole had caused a crusty layer to be formed across its surface, which gave the impression that it had a solid substructure, when in fact its substructure consisted of trash and stagnant water, which was incapable of supporting any person that might attempt to walk on it; and that the surface was in fact a trap and the city officials knew persons were frequently in the immediate vicinity of such trap and were likely to fall through the false surface. The location of the hole is given with a high degree of certainty to one familiar with defendant city.

The amended petition stated further the hole extended "in what is now East Street . . . in what at said time would have been an extension of East Street except for said hole." The petition later alleges the maintenance of the dump "adjacent to said East Sixth

Street and in close proximity thereto." In *Steifer v. City of Kansas City*, supra, we said:

"What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting. Each case must, of necessity, depend upon particular facts and circumstances." (p. 798.)

Following the rule already spoken of for the consideration of demurrers to petitions, we hold that as against a general demurrer the condition of this hole as described in the amended petition described a nuisance as spoken of in *Steifer v. City of Kansas City*, supra, and *Jeakins v. City of El Dorado*, supra.

In both the above cases the damages for which the action was brought were to land or other property. This action is for damages for the death of a small child. We must consider then whether the rule of no immunity where the municipal corporation is maintaining a nuisance applies to damages to the person. This is the scope of the note at 75 A. L. R. 1196, already referred to in this opinion, as having been cited by us in the Jeakins opinion. In that note it is said:

"It is the purpose of the present annotation to determine whether or not this governmental immunity applies in the case of personal injury or death resulting from a nuisance created, maintained, or permitted by the municipality." (p. 1197.)

Further on in the note it says:

"A majority of the courts which have passed upon the question have held that the immunity of municipal corporations from liability for acts done in the performance of governmental functions does not extend to cases of personal injuries or death resulting from a nuisance created or maintained by a municipality, and that a municipality is liable for such injuries, although the nuisance was created or maintained in the course of the discharge of public duties or governmental functions." (p. 1199.)

*Hoffman v. Bristol*, (1931), 113 Conn. 386, 155 A. 499, 75 A. L. R. 1191, the plaintiff was injured on account of diving off a diving board into shallow water in a swimming pool. The court held:

A diving board at a bathing beach maintained by a city, placed about 4 feet above the surface of water little more than 3 feet deep and usually so opaque that its shallowness is not discernable by one standing on the board, no adequate warning of danger being given, may properly be found by a jury to constitute such a nuisance in fact that the defense of immunity from liability as for negligence in the performance of governmental duty is not available in an action for injuries sustained by one diving therefrom.

In the *City of Knoxville v. Lively*, 141 Tenn. 22, 206 S. W. 180, the action was by a streetcar conductor for injuries sustained when he was knocked from his streetcar by a road roller left standing in the street by an employee of the city. One of the defenses raised by the city was its immunity from liability while acting in a governmental capacity. The Supreme Court of Tennessee said:

"For the negligence of its employees in the use and operation of its tools and appliances, in the performance of a strictly governmental duty, a city is not liable for injuries occasioned thereby; but when such instrumentalities are so used and employed as to constitute nuisances, whether temporary or permanent, the city is liable."

To the same effect is *Renstrom v. City of Nampa*, 48 Idaho 130, 279 Pac. 614.

See, also, 63 C. J. S. 66, § 770. There the rule is stated as follows:

"A municipal corporation has no right to create, erect, or maintain a nuisance; it has no greater right in this respect than an individual; and where it creates, maintains, permits, or participates in, or contributes to, the creation or maintenance of a nuisance by nonfeasance or misfeasance it is guilty of tort, and like a private corporation or individual, and to the same extent, is liable for damages in a civil action to any person suffering special injury therefrom, irrespective of the question of negligence. Such liability cannot be avoided on the ground that the municipality is exercising governmental powers or functions . . ."

We hold the demurrer of the city to the amended petition of plaintiffs should have been overruled.

The judgment of the trial court is reversed.