No. 42,402

T. HAROLD MORRIS, *Appellee*, v. THE CITY OF KANSAS CITY, KANSAS, *Appellant.*

(366 P. 2d 788)

Opinion filed December 9, 1961.

*George W. Haley,* of Kansas City, argued the cause, and *C. W. Brenneisen, Jr., Leo J. Moroney, Joseph A. Bukaty,* and *Francis J. Donnelly,* all of Kansas City, were with him on the briefs for the appellant.

*Harold K. Wells,* of Kansas City, argued the cause, and *Albert M. Ross* and *James M. Barnett,* both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

JACKSON, J.: Morris sued the City in the court below alleging that the defendant City was maintaining a nuisance, and had caused his valuable home to be flooded with an extensive loss of personal property and damage to the house itself. After a trial to a jury, the court approved the verdict in favor of the plaintiff in the sum of $8,000. The City now appeals.

The principal question in this appeal is whether the city can be liable when it is apparent that it did not create the nuisance but merely maintained it and had knowledge of its existence.

In May, 1957, plaintiff entered into a contract to buy a house known in the record as 4754 Haskell avenue and located in Village Green Estates, which was at that time a residential area which had been developed outside the city of Kansas City. The house was near a drainage ditch or ravine which ran down and under Haskell ave-

nue. The street crossed this drainage way but a tube or pipe had been placed in the earthen fill to carry the water through. Shortly after the plaintiff signed the contract which carried a stated purchase price of $20,000, there occurred a flood on the drainage way and the basement of the house was flooded. The seller of the house advised plaintiff that he might rescind the contract to purchase the house and this was done. Later on, after further investigation, plaintiff testified he became convinced that the flood had been caused by a stump which had become caught in the drain through the street embankment causing the water to back up in the drain near the house. The plaintiff entered into a new contract to buy the house in which he agreed to pay a total of $19,500 plus other costs or a total of $19,900. The seller agreed to and did repair the damage to the basement. In July, 1957, all matters having been closed, plaintiff moved into his new home.

Shortly thereafter, on August 29, 1957, the Village Green Subdivision, including plaintiff's house, was taken into the city of Kansas City.

In the early summer of 1958, plaintiff apparently determined that the drain through the street embankment was inadequate as it began to be apparent that it had difficulty in carrying off the water. Plaintiff notified the city engineer, the city attorney, and the mayor of the situation and discussed it with them. The assistant city engineer made a rather thorough inspection of the situation and reported to the plaintiff and the city officials that the drain through the embankment was inadequate. Later, both in July and in August of 1958, plaintiff's house was flooded. On August 13 of that year, the city made another survey and reported that the culvert under Haskell avenue was only 36 inches in diameter and should not be less than 72 inches in diameter.

On November 17, 1958, at around 2:00 a. m., plaintiff's basement became flooded to a depth of six feet. Plaintiff filed a claim against the city on January 6, 1959, based upon this last flood and later on May 11, 1959, filed the present action which is based only on the November 1958 flood.

As stated above, the theory of plaintiff's action is that defendant city has been maintaining a nuisance which caused the flooding of plaintiff's house. At the trial plaintiff proved the facts as above described, and also proved that defendant had been maintaining the roadway on Haskell avenue by showing work orders issued therefor

from about January, 1958 until after the November flood. Part of the work had been the cleaning of the inadequate culvert or tube under the street.

At various points in the trial beginning with the demurrer to plaintiff's evidence, the defendant raised certain legal contentions concerning plaintiff's right to maintain the action. The defendant has preserved his points and argues them to this court. The real question is whether defendant is correct in its position, and not at which procedural stage the point was raised.

In the defendant's brief its main point is stated graphically as follows: "In the instant case, the evidence is clear that the city did not create the inadequate drain complained of. Therefore, the city could not possibly be held liable on the grounds that it in any way contributed to the bringing about of the alleged nuisance in the first instance."

The defendant then cites the case of *Galleher v. City of Wichita,* 179 Kan. 513, 296 P. 2d 1062, as an authority to clinch its argument and to show that it cannot be liable.

We fear that defendant overstresses the Galleher case, and has not carefully examined the facts. We quote from the opinion on page 517 as follows:

"The record is clear that defendant city did not create *or maintain the dangerous place alleged to exist."* (Emphasis supplied.)

The opinion then proceeds to point out that the officials of the city had not instituted proceedings to abate the nuisance maintained and controlled by some other person under the provisions of G. S. 1949, 13-1417. Thus it is apparent that defendant errs in saying that defendant was not responsible in the Galleher case because it did not create the nuisance—it neither created it nor maintained the nuisance. It was charged only that the city should have brought an action to abate the nuisance. See also *Rhodes v. City of Kansas City,* 167 Kan. 719, 208 P. 2d 275; and annotation in 56 A. L. R. 2d 1415 at 1422 § 4 referring back to 75 A. L. R. 1204.

We would direct attention to the case of *Lehmkuhl v. City of Junction City,* 179 Kan. 389, 295 P. 2d 621, 56 A. L. R. 2d 1409, in which the city was held responsible for maintaining a city dump as a nuisance, although its creation by the city seems at least problematical. It will, of course, be noticed that the Lehmkuhl case was decided in April and the Galleher case in May of 1956. Both are reported in the same volume of our reports. Both cases were de-

cided by a unanimous court. At least, it must be conceded that this court believed there was a difference in the two cases.

In *Hendren v. City of Kansas City,* 172 Kan. 56, 238 P. 2d 510, we find a case where the city was held liable for only maintaining an attractive nuisance on a portion of an unused street. It will be remembered that it was an attractive nuisance which was involved in the case of *Galleher v. City of Wichita,* supra, which was relied upon by the defendant city. In fact, cases almost as clear as the Hendren case are quite common in this jurisdiction, see: *Kansas City v. Siese,* 71 Kan. 283, 80 Pac. 626; *Roman v. City of Leavenworth,* 90 Kan. 379, 383, 133 Pac. 551; *Steifer v. City of Kansas City,* 175 Kan. 794, 267 P. 2d 474.

There are a number of nuisance cases involving sewers in this jurisdiction, and it has always been the decision of this court that a city was responsible for damage caused if the sewer became a nuisance, *Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706; *King v. City of Kansas City,* 58 Kan. 334, 49 Pac. 88; *State v. Concordia,* 78 Kan. 250, 96 Pac. 487, 20 L. R. A. (NS) 1050; *Jeakins v. City of El Dorado,* 143 Kan. 206, 53 P. 2d 798.

Moreover, we are inclined to believe that the defendant city owed a greater duty to fix this inadequate culvert because it in effect constituted a bridge over which a city street passed. It is an ancient rule that a city is responsible for the condition of the streets within its corporate limits. As we remember it, the rule goes back to the duty to keep the King's highway in repair. But we need not trace the rule so far. We will cite only the opinion of Mr. Justice Brewer in *Jansen v. City of Atchison,* 16 Kan. 358, 380 *et seq.;* and also *City of Eudora v. Miller,* 30 Kan. 494, 2 Pac. 685; *Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197, 18 Pac. 161.

The cases in this jurisdiction show that where a city has either created *or maintained* a nuisance liability attaches and we believe our decisions are in accord with the decisions in other jurisdictions, see cases cited in 75 A. L. R. 1197 and 56 A. L. R. 2d 1415.

In the case at bar, the city was maintaining what amounted to a dam, formed by the city street, on a natural drain. The city knew for many months if not for more than a year of the danger to the plaintiff. As the trial court said at one time, certainly the city with all the notice it had must be responsible.

Defendant contends in its brief that no nuisance existed. We cannot agree. Such a nuisance is defined generally in the second para-

graph of the syllabus in *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798, and we refer interested readers to that definition.

We have carefully considered the briefs in this case, but we find no error. Therefore, the judgment must be affirmed. It is so ordered.

FATZER, J., dissenting: In my opinion the city is not liable for damages under the record presented. It did not create the inadequate drain complained of. The alleged nuisance was within the city as a result of an extension of its corporate limits pursuant to the exercise of governmental power by ordinance annexing property, which included the plaintiff's home. But passing that thought, the evidence, in my opinion, is insufficient to support the jury's finding that a nuisance existed. Assuming, *arguendo*, that a nuisance did exist, the evidence does not reveal any degree of maintenance of the drain by the city under the ordinary usage of the term. On that point the evidence is indeed sparse and strained. Nowhere was there anything to show upkeep, repair or replacement. Furthermore, the home in question was constructed in the bottom of a natural drainage basin and plaintiff purchased the property with full knowledge that flooding might occur—in fact, he obtained a reduction of the purchase price on that account. More could be said, but time does not permit. I would reverse the judgment.