No. 44,626

Jimmy Lee Grover, a minor, by and through his father and next friend, Calvin Grover, *Appellant,* v. City of Manhattan, Kansas, a municipal corporation, *Appellee.*

(424 P. 2d 256)

Opinion filed March 4, 1967.

*Daniel A. Young,* of Lawrence, argued the cause, and *Jerry L. Mershon,* of Manhattan, was with him on the brief for the appellant.

*Donn J. Everett,* of Manhattan, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a damage action instituted by the plaintiff against the City of Manhattan and one of its employees. From an order of the district court sustaining the city's motion for summary judgment, the plaintiff has appealed. The employee is not a party to this appeal.

The question presented concerns the liability of a municipality in the operation and maintenance of its zoo.

The events giving rise to the appeal may be briefly summarized. Jimmy Lee Grover, age ten, while visiting the Sunset Zoo on September 23, 1962, suffered injuries as a result of being attacked and bitten by a coyote which had escaped from its enclosure at the zoo and was running loose in the area frequented by visitors. Plaintiff alleges that the city was negligent in failing to properly restrain the coyote in its pen, and that the city created a nuisance by allowing the animal to run loose. At the pretrial conference the city moved for summary judgment, contending that in the operation of the zoo it was performing a governmental function, and thus was not liable. The lower court, in a memorandum opinion, held that the city was entitled to the protective cloak of governmental immunity on the grounds that (1) the operation and maintenance of the zoo was a governmental function, and (2) "the coyote running loose" did not constitute a nuisance. These grounds, upon which the lower court bottomed its ruling, are the points of error asserted by plaintiff on appeal.

Municipal corporations exist and function in a dual capacity— one governmental, the other proprietary. Generally, municipalities, as arms of the state, are not liable for negligence in the discharge of their governmental functions, but immunity from liability is not extended to municipalities in the exercise of their proprietary functions. In the latter instance, the liability of a city is equivalent to that of an individual or a private corporation. (*Wendler v. City of Great Bend*, 181 Kan. 753, 316 P. 2d 265; *Krantz v. City of Hutchinson, et al.*, 165 Kan. 449, 196 P. 2d 227, 5 A. L. R. 2d 47.)

Plaintiff first asks us to reject the immunity doctrine as it applies to the liability of a municipality in the discharge of its governmental functions, just as we have abandoned it as it applies to charitable institutions and church corporations. The same contention was advanced in the recent case of *Parker v. City of Hutchinson*, 196

Kan. 148, 410 P. 2d 347, where the subject was considered in depth. We adhere to our holding that absent a statute expressly imposing liability, a municipality is not liable for the negligence or misconduct of its officers or employees in their performance of its governmental functions. (Also, see *McCoy v. Board of Regents,* 196 Kan. 506, 413 P. 2d 73, involving the immunity of a state agency.)

Plaintiff next contends the trial court erroneously concluded that the operation and maintenance of the zoo by the defendant city was a governmental instead of a proprietary function.

No single test or rule is relied on by this court in determining whether activities of a municipal corporation are governmental or proprietary. The tests to which plaintiff attaches great weight, in his assertion that the city was acting in its proprietary capacity, are well stated in *Wendler,* where it is held to be:

". . . proper to consider whether the activity is primarily for the advantage of the *state as a whole* or for the *special local benefit* of the community involved, and to further consider whether such activity is in performance of a *duty imposed* upon the municipality by the sovereign power, or is in the exercise of a *permissive privilege* given by the sovereign power, *but such tests are not conclusive* to determine the capacity in which the city's activities are conducted." (Syl. ¶ 3.)

There is substantial authority that maintenance of a public park by a municipality is a governmental function (Anno. 29 A. L. R. 863, 42 A. L. R. 263, 99 A. L. R. 686, 142 A. L. R. 1340; 18 McQuillin, Municipal Corporations [3d Ed. Rev.] § 53.112), and this proposition is supported by our decisions. In the early case of *Harper v. City of Topeka,* 92 Kan. 11, 139 Pac. 1018, it was determined that the maintenance of a city park for the sole benefit of the public, and not for any profit or benefit to the municipal corporation, was a governmental, or public, function. Also, see *Warren v. City of Topeka,* 125 Kan. 524, 265 Pac. 78, 57 A. L. R. 555.

In *Hibbard v. City of Wichita,* 98 Kan. 498, 159 Pac. 399, under facts nearly identical to those here, the liability of a city in maintaining a zoo as part of its park was equated to that of its maintaining a public park. There, it was held:

"The maintenance of a zoological garden in a public park by a city is a governmental function, and the city is not liable in damages for injuries inflicted on visitors by animals through the negligence of the city's officers or agents in not properly confining the animals." (Syl.)

This decision, approbated in many of our later cases, has never been overruled. (*E. g., Rose v. City of Gypsum,* 104 Kan. 412, 179

Pac. 348; *Warren v. City of Topeka,* supra; *Perry v. City of Wichita,* 174 Kan. 264, 255 P. 2d 667; *Freeburne v. City of Emporia,* 176 Kan. 503, 271 P. 2d 298; *Stolp v. City of Arkansas City,* 180 Kan. 197, 303 P. 2d 123, adhered to on rehearing 181 Kan. 225, 310 P. 2d 888.)

Plaintiff, although recognizing the force of the *Hibbard* decision, seeks to distinguish it from the instant case by arguing that the maintenance of a zoo as a part of the city park by the City of Manhattan under authority of K. S. A. 12-1301 is "permissive," whereas the maintenance of a zoo by the City of Wichita under authority of K. S. A. 13-1301 is a "mandatory" duty imposed by the state; therefore, under the "mandatory-permissive" test stated in *Wendler v. City of Great Bend,* supra, the City of Manhattan was acting in its proprietary capacity, and, thus, is subject to liability. We do not agree.

The statute under which the City of Wichita maintained its park system was not discussed in *Hibbard,* nor does it appear that the statute was used as a basis for deciding the case. Were we to adopt the "mandatory-permissive" rule as an exclusive test, we would be creating a distinction whereby the doctrine of governmental immunity would be applicable to cities of over 30,000 population yet would be abrogated for smaller cities engaged in the same activity. We perceive no sound reason for discriminating between cities of different classes when all are engaged in a function clearly for the benefit of the general public, such as the maintenance of a zoo as a part of a city park.

The power of the legislature to lift the cloak of immunity at any time must be acknowledged, but we cannot say, as plaintiff contends, that our lawmakers have inferentially granted immunity by their nonaction in the case of those cities maintaining parks under the mandatory features of K. S. A. 13-1301 but have lifted the cloak by the permissive provisions of K. S. A. 12-1301 in regard to cities in the same class as the City of Manhattan. Moreover, the "mandatory-permissive" test has not been looked to exclusively in determining the nature of a city's activity, for a particular function engaged in by a city under either a mandatory or permissive statute may, nevertheless, be determined to be governmental in character. The matter is discussed in *Stolp v. City of Arkansas City,* supra, p. 202.

Plaintiff further argues there was an element of special corporate or local benefit to the city in its operation and maintenance

of the zoo, thus making the activity proprietary in nature. He relies on the "benefit" test previously referred to in *Wendler*. The argument is not impressive, for it overlooks the essential characteristics of a zoo as a part of a public park being operated and maintained for the benefit and welfare of the public generally and not primarily for the inhabitants of the city.

In *Harper v. City of Topeka*, supra, this court stated:

"The maintenance of the park as described in the petition is clearly a governmental function. The city as a corporation derives no benefit therefrom, but the park is maintained for the benefit of the public without regard to residence. . . ." (p. 15.)

The public nature of a zoo maintained by a city was emphasized in *Hibbard v. City of Wichita*, supra, wherein it was stated:

"Zoological gardens are commonly maintained in parks as a part thereof, under the same authority and for the same reasons that parks are maintained. The same liability should attach to keeping a zoological garden as attaches to the maintenance of a park. No profit is ordinarily received from such gardens. In the present case it does not appear that the defendant city received any profit whatever from its zoological garden. It was kept for the pleasure and education of the entire public. . . ." (p. 499.)

In order for a function to take on a proprietary character, there must be shown some special local benefit accruing to the city itself and its inhabitants rather than to the public at large. Actual, pecuniary profit or gain is no longer required (*Krantz v. City of Hutchinson, et al.*, supra), but whether or not the activity is commercial in nature is a matter of significance (*Wendler v. City of Great Bend*, supra). No substantial hint is given that the zoo operation in the instant case involves any of these characteristics; nor has anything been brought to our attention that would compel a departure from the holding in *Hibbard* that the maintenance of a zoo in a public park by a municipality is a governmental function.

Plaintiff further contends "the coyote running loose" constituted a nuisance created by the city, thereby making it liable even though engaged in a governmental function.

An exception to the general rule that a municipality is not liable for the negligent acts of its officers and employees in their performance of its governmental functions is recognized in this jurisdiction where the city's conduct results in the creation or maintenance of a nuisance. (*Adams v. City of Arkansas City*, 188 Kan 391, 362 P. 2d 829; *Lehmkuhl v. City of Junction City*, 179 Kan. 389, 295 P. 2d 621, 56 A. L. R. 2d 1409; *Steifer v. City of Kansas City*, 175

Kan. 794, 267 P. 2d 474; *Jeakins v. City of El Dorado,* 143 Kan. 206, 53 P. 2d 798.)

Whether or not, in a given case, a nuisance has been created depends upon many factors, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its *frequency, continuity or duration,* and the damage or annoyance resulting, and each case must necessarily depend upon the particular facts and circumstances. ( *Lehmkuhl v. City of Junction City,* supra; *Steifer v. City of Kansas City,* supra.) The foregoing rule was applied in *Rose v. Board of Education,* 184 Kan. 486, 337 P. 2d 652, and was elaborated on in the following language:

> "Running through the various definitions, however, and in the decisions upholding liability where the agency was engaged in a governmental function, is the proposition that the 'nuisance' in question was in fact created and maintained by the city . . . and that it *had been in existence for some time* as contrasted to *an isolated instance of a temporary nature,* . . ." (Emphasis added.) (pp. 489-490.)

Here, it is not contended the coyote was outside its pen other than on the occasion when plaintiff was injured. This was an isolated instance of a temporary nature. For this and other obvious reasons the situation falls far short of being a nuisance as defined by this court. At most, this appears to be nothing more than an ordinary negligence case.

For the foregoing reasons we conclude that the city was acting in a governmental function, and the facts did not bring it within the nuisance exception to the immunity doctrine. There being no statute imposing liability, the district court correctly sustained the city's motion for summary judgment.

The judgment is affirmed.