No. 44,874

JUANITA M. CAYWOOD, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellant.*

RICHARD D. CAYWOOD, A Minor, by His Natural Guardian and Next Friend, JUANITA M. CAYWOOD, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *Appellant.*

(434 P. 2d 780)

Opinion filed December 9, 1967.

*Robert H. Nelson,* of Wichita, argued the cause and *John W. Brimer, W. A. Kahrs, H. W. Fanning, Richard C. Hite, Darrell D. Kellogg, Roger Sherwood* and *Richard L. Honeyman,* all of Wichita, were with him on the brief for appellant.

*Donald R. Newkirk,* of Wichita, argued the cause and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, David W. Buxton, John T. Conlee, John Prather, Richard I. Stephenson, Douglas D. Johnson* and *Hugo T. Wedell,* all of Wichita, were with him on the brief for appellee.

*Robert C. Londerholm,* Attorney General, *Richard H. Seaton,* Assistant Attorney General, and *J. Richard Foth,* Assistant Attorney General, were on the brief for the *Amicus Curiae.*

The opinion of the court was delivered by

FROMME, J.: These consolidated actions were brought to recover

damages for a boy and his mother as a result of personal injuries sustained by the boy when he dived from a dock into shallow water at Lake Afton, a recreational area owned and maintained by Sedgwick county.

The actions were filed September 30, 1963. The defendant filed a motion to strike which was treated by the parties and the court as a demurrer to the two separate causes of action set forth in each of the petitions. (At times we will refer to these consolidated actions in the singular since the procedure followed in each case is the same.)

The demurrer was heard on December 2, 1963, and the court sustained it as to the first cause of action (negligence) and overruled it as to the second cause of action.

Plaintiffs appealed from the order sustaining the demurrer to the first cause of action. That appeal was perfected and the order sustaining the demurrer to the first cause of action was affirmed by this court in *Caywood v. Board of County Commissioners,* 194 Kan. 419, 399 P. 2d 561. The reach of that decision is succinctly stated in the opinion as follows:

"Notwithstanding plaintiff's argument as to the application of § 18 of the Bill of Rights, which provides that all persons, for injuries suffered in person, shall have remedy by due course of law, we decide this case—not on the basis of the 'governmental—proprietary' function doctrine as applied to cities—but on the basis of the many decisions of this court to the effect that in the absence of a statute imposing liability—a county is not liable in damage for negligence. Should the legislature see fit to abolish such immunity, it is of course within its power to do so." (p. 423.)

The second causes of action were presented and tried by plaintiffs on the theory of nuisance and the jury returned substantial verdicts in each of the consolidated cases against the county. The present appeal followed.

The plaintiffs-appellees challenge the right of defendant-appellant to be heard upon the sufficiency of the petition because of procedural matters.

The procedure in the trial court is complex and confusing. The two cases, arising out of the same injury, were consolidated for trial. Trial of the case was separated on split issues. The issues on liability were tried to a separate jury in advance of a trial on the question of damages. Motions for new trial were filed after each verdict. The original petition as filed contained the two separate claims or causes of action. The second cause of action incorporated

pertinent paragraphs of the first cause of action by reference. When plaintiff appealed from the order sustaining the demurrer to the first cause of action the defendant did not cross-appeal from the order overruling the demurrer to the second cause of action as it might have done.

The procedure was complicated in other particulars. Plaintiff filed an "amended petition" on December 12, 1963, covering the second cause of action and incorporating pertinent allegations from the first cause of action. Defendant filed a motion to dismiss which was overruled and defendant applied for permission to take an interlocutory appeal. Permission for the appeal was refused by this court. Plaintiff then applied for an order *nunc pro tunc* to correct the order overruling defendant's motion to strike (order overruling the demurrer) to permit an amended statement of the second cause of action to stand as set forth in the original petition, unaffected by the separation of the two causes of action. This was done and the changes were deemed made by interlineation. The "amended petition" thus became an "amended statement of second cause of action." The effect of this was to reconstitute and restate the second cause of action, without material change in substance, as originally filed on September 30, 1963.

When this was accomplished the order overruling defendant's motion to dismiss the "amended petition" became of little consequence, for it became a second ruling on the sufficiency of the identical second cause of action to which the demurrer had been lodged and overruled on December 2, 1963.

Appellees challenge defendant's right to question the sufficiency of the second cause of action to state a claim on which relief can be granted upon four procedural grounds which we will treat in order.

They contend that failure to take a cross-appeal from the order overruling the demurrer to the second cause of action precludes appellant from now raising the question.

No reason appears why appellant could not have filed a cross-appeal from that order and a cross-appeal at the time of the first appeal might well have terminated these cases. Such an order, although not a final order under G. S. 1949, 60-3303, was an appealable order under G. S. 1949, 60-3302.

However, when a timely appeal is perfected after final judgment the fact that a ruling was made more than thirty (30) days [for-

merly two months] before filing of the notice of appeal does not prevent a subsequent review of the ruling. (See K. S. A. 60-2103 (*i*) [formerly G. S. 1961 Supp. 60-3314 (*a*)]; *Herron v. Chappell,* 174 Kan. 350, 255 P. 2d 632; *State Highway Commission v. Safeway Stores,* 170 Kan. 545, 228 P. 2d 208.)

The cases which appellees cite to sustain their contention (*Schumacher v. Rausch,* 190 Kan. 239, 372 P. 2d 1005; *Fields v. Anderson Cattle Co.,* 193 Kan. 569, 396 P. 2d 284; *Fields v. Blue Stem Feed Yards,* 195 Kan. 167, 403 P. 2d 796) relate to appeal and cross-appeal after a final judgment has been rendered and when a party attempts to cross-appeal out of time or attempts to take a second and separate appeal from a final judgment. The cases are not in point. No other appeal from final judgment has been taken in the present cases.

Appellees further argue that a ruling on a demurrer, unappealed from, becomes the law of the case and must be treated on appeal as a binding adjudication. The statement is too broad. An order overruling a demurrer to a petition is not a final order. The cases cited by appellees are based upon acquiescence in an order *sustaining* a demurrer to a pleading. In such cases if the pleader acquiesces in the ruling by filing an amended pleading he may not later question the ruling on his original pleading. In the present cases the order questioned by appellant relates to the appellees' petition. The appellant did not acquiesce in this ruling on the demurrer.

The fact the trial court by pre-trial conference order struck the defense of governmental immunity and the defense of failure to state a cause of action does not preclude defendant from now questioning the sufficiency of the statement of the second cause of action. A pre-trial order denying a defense is not appealable prior to final judgment in the action where it does not in effect determine the action and prevent judgment for defendant. (*Borgen v. Wiglesworth,* 190 Kan. 365, 375 P. 2d 600; *Connell v. State Highway Commission,* 192 Kan. 371, 388 P. 2d 637.)

The appellees contend that this appeal is limited in scope because appellant failed to challenge the order overruling the demurrer by motion for new trial. Overlooking for a moment the question of the necessity of filing such a motion, the sufficiency of the petition was challenged by appellant in a motion for new trial. The appellant at the close of the trial on the issue of damages stated

in its motion "the court erred in submitting to the jury the question as to whether or not defendant maintained a nuisance at Lake Afton and Question No. 2 [special question submitted to jury], the conditions constituting a nuisance, when in truth and fact, the pleadings did not contain the allegation that the defendant had maintained a nuisance." In addition, in other paragraphs of the motion complaint is made of the order of the court striking the defense of governmental immunity and of submitting to the jury the question of nuisance.

The question, whether a judgment is supported by the pleadings, was open to review under the old code without a motion for new trial. (*Ford v. Sewell*, 188 Kan. 767, 366 P. 2d 285.) The filing of a motion for a new trial is not a prerequisite to appellate review under the rules applicable to the new Code of Civil Procedure (Supreme Court Rule No. 6 [*d*], 197 Kan. LXI; *Moyer v. Board of County Commissioners*, 197 Kan. 23, 415 P. 2d 261.)

Appellees question the right of appellant to be heard on the sufficiency of the petition because of failure to include in the notice of appeal the order overruling the demurrer to the second cause of action of December 2, 1963. The Notice of Appeal reads in part:

"1. From the order of the District Court entered on the 2nd day of *May*, 1963, overruling the defendant-appellant's demurrer to the plaintiffs second cause of action.

"2. From the order of the District Court dated February 12, 1964, wherein the Court overruled the defendant-appellant's motion to dismiss the amended petition."

Even though the month is incorrect, the order appealed from was adequately identified and no one was misled thereby. Our statute on notice of appeal (K. S. A. 60-2103 [*b*]) does not require the judgment or part appealed from to be identified by the specific date of its entry.

Appellees' statement, the order overruling the demurrer is not included in the "Statement of Points," is in error. Item No. 10 of the Statement of Points reads:

"10. The court erred in overruling the defendant's demurrer to the plaintiff's second cause of action same having been the motion of plaintiff having been treated as a demurrer by the court."

The failure of the second cause of action to state facts sufficient to constitute a claim against the county was squarely raised before the trial court and preserved on appeal.

Under our holding in *Caywood v. Board of County Commissioners,* supra, the plaintiffs' second causes of action must state something more than claims based upon negligent tort. Plaintiffs attempt to state claims based upon a nuisance. If they do not then the second causes of action must also fail.

This court has not decided the question of whether a county is liable for damages arising out of circumstances constituting a nuisance.

In *Keesee v. Board of County Commissioners,* 177 Kan. 706, 281 P. 2d 1089 and in *Wilburn v. Boeing Airplane Co.,* 188 Kan. 722, 366 P. 2d 246, the facts pleaded did not constitute a nuisance. In other cases against counties liability for negligence has been imposed by specific statute for damages arising from defects in roads and bridges or from the operation of motor vehicles. We have no specific statute imposing liability in the present case. Therefore we must first examine the second cause of action to determine if circumstances constituting a nuisance are stated.

The amended statement of the second cause of action as constituted after the order *nunc pro tunc* reads:

"Comes now plaintiff and for second cause of action herein alleges and states:

"1. Plaintiff is a minor of the age of 16 years and this action is brought for his benefit by his natural guardian and next friend, specifically, his mother, Juanita M. Caywood, both of whom are residents of Wichita, Sedgwick County, Kansas.

"2. Defendant exercises the powers of Sedgwick County, Kansas as a body politic and corporate and pursuant to the statutes of the State of Kansas actions against said County shall be against said Board of County Commissioners.

"3. On or about May 26, 1962, plaintiff was severely and permanently injured when he dived off of a dock into water approximately three to four feet deep at a lake known as Lake Afton. At that time plaintiff was 14 years of age.

"4. Lake Afton and the territory surrounding said lake was acquired by and for many years has been and is now owned, maintained and operated by defendant pursuant to statutes of the State of Kansas in such cases made and provided. Since about the year 1958 or prior thereto defendant has furnished water from said Lake Afton to the owner of property adjacent to said Lake Afton property owned by defendant, such water being furnished by means of the water pump hereinafter referred to in Paragraph 8; at the time said pump was installed defendant built or extended the dock described in Paragraph 8 for the purpose of such installation.

"5. The recreational facilities at Lake Afton are available for use of the general public.

"6. Swimming at said lake has always been permitted and children constitute a large percentage of the persons who swim at Lake Afton; however, in

the management and operation of Lake Afton defendant has undertaken to establish certain areas where swimming is not permitted and such areas where swimming has been determined to be unsafe and not permitted are designated by signs notifying the public, which signs are relied upon by members of the public. A true and correct representation of one of such signs is attached to the original petition filed herein as Exhibit 'B' and made a part thereof. On May 26, 1962 no such signs were posted in the area where plaintiff dived; and on said date and on days prior and subsequent thereto persons were swimming in the immediate vicinity of the place where plaintiff dived.

"7. Sometime prior to May 26, 1962 defendant had erected and maintained a 'no swimming' sign at said dock, but many months prior to May 26, 1962 such sign had been destroyed or removed and had not been replaced. On May 26, 1962 there were no signs or other warning that the water where plaintiff dived was shallow.

"8. The dock from which plaintiff dived extended from the northerly shore of an inlet or cove on the easterly side of said lake toward the center of said inlet or cove. Such dock was approximately 5 to 6 feet wide, 120 to 150 feet long, and the top surface thereof was approximately 1 to 2 feet above the surface of the water. Such dock had no rails or other protective devices along the sides thereof and no gate or other device to prohibit access to said dock. At the south or water end of such dock there was a small shed which covered a water pump and from such pump a pipe extends along one side of said dock toward the shoreline of said lake and from the shoreline said pipe extends northward across land owned by defendant to and into the adjacent land where water pumped from Lake Afton is used by the owner of such adjacent land. A true and correct representation of said dock and shed is attached to the original petition filed herein as Exhibit 'C' and made a part thereof.

"9. At the time of year herein involved the weather was hot and the last days of school were approaching, by reason of which defendant knew or in the exercise of ordinary prudence should have known that a large number of children would come to said lake to swim and that nothing would be more inviting to such children than to swim at any convenient place they might find. (Defendant also knew or should have known that said dock constituted an open invitation to boys of plaintiff's age to dive, a temptation which they could not be expected to resist when said dock was unguarded, with nothing to prevent its use and nothing to indicate that diving or swimming at such dock was dangerous or prohibited.)

"10. By reason of said circumstances said dock and said conditions surrounding it constituted an attractive nuisance and defendant knew or should have known that children would be attracted thereto and would dive therefrom unless effectively prevented therefrom.

"11. The maintenance of said attractive nuisance by defendant proximately caused and resulted in the injuries sustained by plaintiff."

The balance of the claim relates to the nature and extent of the injuries and a prayer for judgment. It is not necessary to further lengthen this opinion by quoting these final paragraphs.

We note that this was a comprehensive pleading covering the

material facts surrounding the injury. The evidence introduced at the trial did not vary or change the allegations of the amended statement of the second cause of action in any substantive way. The evidence would not aid the allegations of the petition on any theory including that of nuisance.

This case was tried on the theory of nuisance.

The trial court ruled the doctrine of attractive nuisance was not in the case and we agree. The attractive nuisance doctrine is applied in cases to determine the duty of an owner or occupant to trespassers.

38 Am. Jur., Negligence § 144, p. 808, expresses the purpose and extent of the attractive nuisance theory thus:

". . . It is not doing violence to the facts, but, on the contrary, is in accord with sound experience as well as humanitarian principles, to say that one who maintains upon his premises an instrumentality or condition which is attractive to children within the requirements hereinafter considered, is bound to anticipate the presence of children who will be allured to and upon the premises by the attraction, and to exercise ordinary care for the safety of such children. Under this theory, *the use of the expression 'attractive nuisance' indicates no departure or exception from the ordinary run of negligence cases.* The expression is merely a convenient one used to designate a class of cases within the general rule that one is liable for injury resulting to another from failure to exercise the degree of care commensurate with the circumstances. . . ." (Emphasis added.)

Under the allegations of the second cause of action plaintiff was not a trespasser or a child of tender years. Lake Afton is a recreational facility operated, maintained and open to the public. This court has recognized the application of the theory as expressed in Am. Jur. in various cases, including *Price v. Water Co.*, 58 Kan. 551, 50 Pac. 450; *Kansas City v. Siese*, 71 Kan. 283, 80 Pac. 626; *Smith v. Evans*, 178 Kan. 259, 284 P. 2d 1065, and *Brittain v. Cubbon*, 190 Kan. 641, 378 P. 2d 141.

The question of what constitutes maintenance of a nuisance has been considered in many of our cases. The following have been held to constitute a nuisance.

Sewage plants discharging raw sewage and producing noxious and injurious odors, dangerous to health and life of nearby inhabitants, have been held a nuisance. (*State v. Concordia*, 78 Kan. 250, 96 Pac. 487; *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798; *Adams v. City of Arkansas City*, 188 Kan. 391, 362 P. 2d 829.)

A merry-go-round containing ropes, cables, engine, tank, fuel and baby rack when placed in a public street causing hazard and danger to the public of an aggravated character was held to be a nuisance. (*Malchow v. City of Leoti*, 95 Kan. 787, 149 Pac. 687.) The city was held not liable on other grounds.

A fairgrounds operated for auto racing and carnivals which caused damage to homes adjacent thereto because of dust and noise and which created a dangerous traffic hazard was held a nuisance. (*Buckmaster v. Bourbon County Fair Ass'n*, 174 Kan. 515, 256 P. 2d 878.)

A school athletic field with a loudspeaker, bright lights and clouds of dust at ball games so annoyed adjacent property owners as to be a nuisance. (*Neiman v. Common School District*, 171 Kan. 237, 232 P. 2d 422.)

A public dump which emits foul odors, smoke, from which trash is blown on adjacent properties, and which remains a breeding ground for insects and rodents may be a nuisance. (*Steifer v. City of Kansas City*, 175 Kan. 794, 267 P. 2d 474.)

A city dump maintained in a water hole where debris was deposited to form a crust through which two small children fell into eighteen feet of stagnant water was held to be a trap for the unwary and when allowed to exist for many months without barriers or warning of the latent dangerous condition was held to amount to a nuisance. (*Lehmkuhl v. City of Junction City*, 179 Kan. 389, 295 P. 2d 621.)

An inadequate and defective surface water drain so placed as to dam up water, continuously flood neighboring houses and buildings during heavy rainfall, and not corrected during a period of more than one year, was held to constitute a nuisance. (*Morris v. City of Kansas City*, 189 Kan. 52, 366 P. 2d 788.)

The following have been held not to constitute a nuisance.

Swimming pools in city parks constructed of concrete and equipped with swimming pool accessories have been held not a nuisance, although attractive to children. (*Harper v. City of Topeka*, 92 Kan. 11, 139 Pac. 1018; *Gilliland v. City of Topeka*, 124 Kan. 726, 262 Pac. 493; *Warren v. City of Topeka*, 125 Kan. 524, 265 Pac. 78; *Sroufe v. City of Garden City*, 148 Kan. 874, 84 P. 2d 845; *Shoemaker v. City of Parsons*, 154 Kan. 387, 118 P. 2d 508.)

An artificial tunnel and drainage channel constructed by a city in which a boy drowned did not subject the city to liability for

maintaining a nuisance. (*Gorman v. City of Rosedale*, 118 Kan. 20, 234 Pac. 53.)

A sprinkler operated in connection with a city park department bathing facility was determined not to be a nuisance. (*Rose v. City of Wichita*, 148 Kan. 317, 80 P. 2d 1078.)

A municipal dump supervised by a dumpmaster, not annoying nearby residents, in which a young boy was seriously burned by live coals from rubbish being burned in the dump was held not to be a nuisance. (*Bruce v. City of Kansas City*, 128 Kan. 13, 276 Pac. 284.)

Sawdust and debris in a dug-out basement, set on fire and left to smolder for several days without warnings was not a nuisance even though a young boy was burned therein. (*Rhodes v. City of Kansas City*, 167 Kan. 719, 208 P. 2d 275.)

A gravel pit, roadway and gravel trucks operating therefrom causing noise and dirt, and creating a hazardous condition at an intersection where plaintiff was injured in a truck, was not a nuisance even though the hazardous condition was permitted to exist without warning or flagmen. (*Keesee v. Board of County Commissioners*, supra.)

A sand pit excavation full of water where children fished and swam in a densely populated area was not a nuisance even though a boy was drowned using a diving board which others had constructed and which the city had failed to remove. (*Galleher v. City of Wichita*, 179 Kan. 513, 296 P. 2d 1062.)

An unprotected pit of live coals left from a burned tree stump was held not a nuisance even though it caused injury to one using the school playground. (*Rose v. Board of Education*, 184 Kan. 486, 337 P. 2d 652.)

An improperly protected crosswalk made hazardous by flood lights, traffic congestion and lack of traffic control was held not a nuisance although plaintiff was injured using the same. (*Wilburn v. Boeing Airplane Co.*, supra.)

A zoo in a public park from which a coyote was negligently permitted to escape and injure a person was held not to be a nuisance. (*Grover v. City of Manhattan*, 198 Kan. 307, 424 P. 2d 256.)

In *Steifer v. City of Kansas City*, supra, the court defined a nuisance as follows:

". . . Nuisance means annoyance, and any use of property by one which gives offense to or endangers life or health, violates the laws of decency, un-

reasonably pollutes the air with foul, noxious, offensive odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another, may be said to be a nuisance. What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting. Each case must, of necessity, depend upon particular facts and circumstances." (p. 798.)

*Wilburn v. Boeing Airplane Co.,* supra, recites:

". . . Briefly stated, the word 'nuisance,' while perhaps incapable of precise definition, generally is held to be something which interferes with the rights of citizens, whether in person, property, or enjoyment of property or comfort, and also has been held to mean an annoyance, and that which annoys or causes trouble or vexation, that which is offensive or noxious, or anything that works hurt, inconvenience or damage." (p. 731.)

*Grover v. City of Manhattan,* supra, states:

"Whether or not, in a given case, a nuisance has been created depends upon many factors, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its *frequency, continuity or duration,* and the damage or annoyance resulting and each case must necessarily depend upon the particular facts and circumstances. . . ." (p. 312.)

The amended statement of plaintiff's second cause of action graphically sets out the conditions surrounding plaintiff's tragic dive from the dock into the shallow water of Lake Afton which resulted in total and permanent paralysis of plaintiff below his neck. Attached to the amended statement, which we will call the petition, is a photograph which is a true and correct representation of said dock and shed. Four electric power wires run from the small shed at the end of the dock connecting the shed with electric power on shore. These wires hang suspended the full length of the dock. There is a large pipe lying on the surface of the dock running the full length thereof. The dock, shed and pump were built and installed for the purpose of furnishing water to an adjacent landowner. The wooden surface of this dock is supported by joists which are in turn held up by pilings extending below the surface of the water. There are no signs on the dock and there are no diving boards, platforms, steps or handrails to indicate that the dock was intended to be used for swimming or diving. A swimmer has no apparent means to return to the dock once he is in the water. The dock was approximately one to two feet above the water and the water was three or four feet deep where plaintiff

dived. It is apparent the dock was not constructed to accommodate swimming or diving.

Appellees rely heavily upon *Hoffman v. Bristol,* 113 Conn. 386, 155 Atl. 499, 75 A. L. R. 1191. There a diving board at a bathing beach maintained by a city was placed about four feet above the surface of the water. The water below was three feet deep and so opaque that its shallowness was not discernible to one standing on the diving board. No adequate warning of the danger involved in diving from the board was posted. The court stressed that the absence of any warning of the depth of the water to a member of the public accepting the invitation offered by the presence of the diving board, and its manifest purpose, justified a holding that the city created such an inherently dangerous menace to the users as to constitute a nuisance.

Assuming without deciding that the rationale of *Hoffman v. Bristol,* supra, should be adopted in Kansas, certain controlling facts of that case are not pleaded or present in this case. The present dock was not constructed to accommodate swimmers or divers. It was not located in a swimming area. The fact that the "no swimming" sign at the dock had been destroyed or removed and not replaced for many months prior to plaintiff's injury did not make this a swimming area. The plaintiff's injuries came as a result of diving in a "no swimming" area. The allegation in the petition that the dock constituted an open invitation to dive therefrom is refuted by the photograph attached to the petition. There is nothing shown in this picture which might indicate this dock was constructed for swimming and diving and plaintiffs do not allege such a purpose. The pumphouse, the electric wiring suspended above the dock and the water pipes supported by the dock all clearly indicate a purpose other than the accommodation of persons swimming in that "no swimming" area. At most the failure to replace a "no swimming" sign is a negligent omission.

The basic facts contained in the first eight paragraphs of the second cause of action are set forth in identical wording as they appeared in the first cause of action. This court in the first appeal determined that action was based on negligence and a county is not liable in damages for negligence absent a statute creating liability.

The principal difference in the statements of the two claims

appears in paragraphs 9, 10 and 11 of the second cause of action as compared to paragraph 9 of the first cause of action.

In paragraph 9 of the first cause of action the pleader concludes from the basic facts stated in the first eight paragraphs that defendant was guilty of negligence in ten particulars which proximately caused plaintiff's injuries.

In paragraphs 9, 10 and 11 of the second cause of action the pleader concludes because of the season of the year in which the injury occurred the defendant knew or with ordinary prudence should have known that people would frequent the lake, that the dock constituted an open invitation to dive therefrom and that it constituted a nuisance which proximately caused plaintiff's injury.

Although two basically different claims may arise from the same facts surrounding an incident, we are convinced the facts alleged in the second cause of action did not state a claim for nuisance against the county.

The allegations of the petition do not fit the definitions of "nuisance" as laid down by this court in *Steifer v. Kansas City,* supra, *Wilburn v. Boeing Airplane Co.,* supra, or *Grover v. City of Manhattan,* supra. The dock and area surrounding it did not annoy or give offense to life or health of people in the area. It did not obstruct the reasonable and comfortable use and enjoyment of the property of another. There was nothing in the type of area, the nature of the single injury alleged, or in particular facts and circumstances which would make it a nuisance. We decline to say that the petition alleged something which of itself works hurt, inconvenience or damage within the general rationale of the cases summarized in this opinion.

The demurrers to plaintiffs' separate causes of action should have been sustained. The judgments are reversed and the cases are remanded to the court below with instructions to set aside the verdicts and dismiss both causes of action.

It is so ordered.