No. 45,154

Michael Cherry, a Minor, by and Through His Father, Natural Guardian and Next Friend, Billy Donald Cherry, *Appellee*, v. The Board of County Commissioners of the County of Crawford, Kansas, *Appellant*.

(446 P. 2d 734)

Opinion filed November 9, 1968.

*Wilbert W. Phalen*, of Pittsburg, argued the cause and was on the brief for the appellant.

*Bradley Post*, of Wichita, argued the cause, and *J. John Marshall*, of Pittsburg, and *Gerald L. Michaud, Russell Cranmer, Orval L. Fisher, M. William Syrios*, and *Kenneth L. Ingham*, all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This is an action for personal injury based on maintenance of a nuisance upon land owned by the board of county commissioners of Crawford county, Kansas. In separate jury trials issues of liability and damages were determined favorably to plaintiff, who was four years of age at the time of his injury.

The pleadings in the case were largely superseded as a result of action taken at pretrial conference. There plaintiff elected to proceed on his action for damages upon the theory of nuisance in allowing a dangerous and unsafe condition to prevail upon two lots owned by defendant board in the town of Radley. Plaintiff withdrew his cause of action upon the basis of negligence or attractive nuisance as originally pleaded. The defendant raised the defense of governmental immunity and also denied existence of a nuisance and that any injury to plaintiff was caused by its maintenance of a nuisance.

The trial court by pretrial order ruled as a matter of law that

governmental immunity was not a defense available to defendant and further that there was no issue as to contributory negligence of the child or parent. It was stipulated the defendant board had in 1942 purchased lots 6 and 7, the lots in question, at tax foreclosure sale and was thereafter record owner of the lots. Issues of fact for jury trial were determined to be whether a nuisance existed on property owned by the defendant, whether plaintiff sustained injury as a direct or proximate result of any nuisance found to exist, and the amount of any damages sustained by plaintiff.

As indicated, a jury found that a nuisance existed on May 2, 1965, the time of the incident in question, that the defendant board created, maintained or failed to abate a nuisance of which it had notice, and the nuisance was a direct cause of plaintiff's injury. Another jury determined the amount of plaintiff's damages, judgment was entered thereon, and defendant has now appealed.

The first question raised upon appeal, whether a county is liable for damages for creation or maintenance of a nuisance, has previously been before this court but it was unnecessary to a decision in any of those cases to determine that issue; again we give prior consideration to another aspect of the appeal.

Defendant board now contends, as it did at trial, that plaintiff's evidence was insufficient as a matter of law to constitute a nuisance permitting recovery. We summarize plaintiff's evidence. Billy Cherry, who lived in Radley with his wife and son Michael Gregg, testified as follows:

"In April of 1962, we began building our home in Radley, Kansas. Across the gravel street and directly east of our house are located lots 6 and 7. Each lot is 150 feet in depth and 50 or 60 feet wide. These lots are vacant. In April of 1962 both lots were covered with weeds, tin cans, wire, broken bottles and glass. The weeds covering most of the lots were as high as my head. I had been told that there was an abandoned well located on one of the two lots.

"In April of 1962, while employed by Crawford County in the highway department, I asked Joe Saia, one of the county commissioners, about cleaning up the debris on these lots directly east of my house and also I advised him about the well on the lots.

"During the month of April, 1962, I also talked to my supervisor, 'Chuck' Fedell and to Bill Niggeman, county engineer, about cleaning the lots.

"In February, 1965, the condition of the lots still existed and I took it upon myself to clean these lots. I started on lot 7, which is the corner lot directly across the road from my house. I cleared most of lot 7 of wild berry briars, wire, weeds, tin cans, and broken glass. By May 2, 1965, I had cleared most of lot 7 up to within a foot of the abandoned well. On May 2, 1965, the uncleared area of lot 7 and all of lot 6 was covered with weeds, five to six feet

in height, tin cans, broken glass, and dilapidated pop cases, wire, dead trees and stumps. The area was inhabited by snakes, rats, and mosquitos.

"I did not discuss the condition of these lots with any county official, nor did I request that the lots be cleared, after the month of April, 1962. I did not know that Crawford County owned these lots until after May 2, 1965.

"During February, March and April, 1965, while I was working clearing lot 7, my son, Michael Greg Cherry, who was then four years old, on several occasions came onto the lot to watch me work. On these occasions he remained on the lot, with my knowledge, for periods of five, ten or fifteen minutes at a time. To the best of my knowledge, my children had not been upon the lots until I started to clear them.

"On the morning of May 2, 1965, I went over to lots 6 and 7 to continue the work of clearing the lots. Within a short time after I started work on the lots, I saw my son, Michael Greg Cherry, who was then on lot 6, at or near the edge of the abandoned well. I yelled at him and he turned around, and he took two real fast steps away from the abandoned well and fell. I heard the child scream and I went over and picked him up and saw that he had sustained a severe cut in the palm of his hand. When he fell, he struck his hand on a piece of broken glass.

"Several weeks after the injury to my son, I went to the Register of Deeds Office and was informed that the county owned these lots."

The two lots over a period of twenty or twenty-five years were variously described by long-time residents of Radley as follows:

". . . covered with trees, weeds, wire and debris. . . . have had a brushy covering for the past twenty-five years. When you walk by the lots you can see refuse in the grass, old pop cases, cans and bottles. . . . had nothing on them but a lot of brush, tin cans, and trees. . . . covered with weeds, glass, tin cans and other debris."

On behalf of defendant the county highway superintendent testified that in July, 1965, he investigated a reported abandoned well on a vacant lot in Radley; with other county employees he walked over lots 6 and 7 and found a depression which he determined to be the reported abandoned well; this depression was five and one-half feet long, three feet wide and twenty-two inches deep; the county employees filled the depression with a load of shale; the uncleared area of lots 6 and 7 was covered with weeds and sumac trees; there were a few cans and broken bottles.

In *Caywood v. Board of County Commissioners*, 200 Kan. 134, 434 P. 2d 780, this court quoted approvingly the definition of a nuisance stated in *Steifer v. City of Kansas City*, 175 Kan. 794, 267 P. 2d 474, as follows:

". . . Nuisance means annoyance, and any use of property by one which gives offense to or endangers life or health, violates the laws of decency, unreasonably pollutes the air with foul, noxious, offensive odors or smoke, or

obstructs the reasonable and comfortable use and enjoyment of the property of another, may be said to be a nuisance. What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting. Each case must, of necessity, depend upon particular facts and circumstances." (pp. 143, 144.)

In *Caywood* this court reviewed many of our nuisance cases. Plaintiff here relies particularly upon three of them to sustain his contention the jury findings were sufficiently supported by the evidence. The first is *Steifer v. City of Kansas City,* supra, in which this court stated that a public dump which emits foul odors and smoke, from which trash is blown onto adjacent properties, and which remains a breeding ground for insects and rodents may be a nuisance. The action was by an owner of land adjacent to the dump and was one to abate the alleged nuisance and to recover damages arising from the maintenance of the nuisance.

Plaintiff cites *Lehmkuhl v. City of Junction City,* 179 Kan. 389, 295 P. 2d 621, 56 A. L. R. 2d 1409. Here a petition seeking damages for wrongful death alleged a hole was allowed to exist within the limits of a city in close proximity and adjacent to a city street; that it was eighteen feet deep and had been partly filled with debris while being used as a city dump so that there was formed across the top of it a crusty layer which gave the impression the hole had a solid substructure, when as a matter of fact the substructure was not solid but consisted of trash and stagnant water and was incapable of supporting any weight, and the three-year-old son of plaintiffs attempted to walk on it and was drowned. It was held the petition stated a cause of action based upon nuisance.

Plaintiff also relies on *Morris v. City of Kansas City,* 189 Kan. 52, 366 P. 2d 788, in which an inadequate and defective surface water drain, placed so as to dam up water and continuously flood neighboring houses and buildings during heavy rainfall, and not corrected during a period of more than one year, was held to be a nuisance.

Plaintiff argues that under the foregoing, as well as other decisions, his evidence presented a classic case of nuisance as defined by this court. Indeed, the case presents certain aspects of a nuisance; namely, debris, trash, glass, an abandoned well, insects and rodents, and, as stated by plaintiff, the lots could well be characterized as an "eyesore" to the community. But it must be kept in mind this is not an action to abate a nuisance damaging adjoining

land or landowners in the use and enjoyment of their land—it is one for personal injury based on maintenance of a nuisance.

In all of our cases declaring liability for damages for creation or maintenance of a nuisance there has been causal connection between the things complained of—the nuisance—and the injury or damage, that is, a showing that the nuisance caused the damage. This has been true whether the injury was to adjacent property and its enjoyment as in *Steifer* and *Morris*, or to person as in *Lehmkuhl*. It is elemental the nuisance complained of must be the proximate cause of the injury and damage for which recovery is sought (39 Am. Jur., Nuisances, § 17; 66 C. J. S., Nuisances, § 8b).

What caused the injury to plaintiff here? We have already set forth all the evidence revealed by the record. The father yelled at his four-year-old son when he saw the boy at or near the edge of the abandoned well. The boy turned around and took "two real fast steps" away from the well and fell. In falling he struck his hand on a piece of broken glass, sustaining a severe cut in the palm of his hand. No other offensive condition of the premises, alleged to constitute the nuisance, is shown as causing or having any connection with the child's injury. The evidence must be viewed in the light most favorable to plaintiff, giving him the benefit of every reasonable inference thereof. However, in determining causation we are unable to draw any inference more favorable to plaintiff than the simple facts stated. That the lots may have been maintained in a manner infringing upon the use and enjoyment of adjoining property is a factor too remote to constitute causation for plaintiff's injury. Although proximity of the well must be considered in determining whether an actionable nuisance existed, the case presents a far different situation from that in *Lehmkuhl* where the latent dangerous condition constituting the nuisance directly caused injury. Here the injury was actually caused by plaintiff's fall on a piece of glass near the well. In our opinion the conditions which caused injury would not, as a matter of law, be a nuisance. Plaintiff's evidence therefore must be held insufficient to support the finding of nuisance.

The judgment is reversed.

APPROVED BY THE COURT.