No. 46,567

Dick Culwell, *Appellant*, v. Abbott Construction Co., Inc., *Appellee*.

(506 P. 2d 1191)

Opinion filed March 3, 1973.

*William H. Stowell* and *Doris Dixon Stowell,* of Phillipsburg, were on the brief for the appellant.

*Raymond L. Dahlberg,* of Great Bend, argued the cause, and *Lee Turner* and *J. Eugene Balloun,* were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover damages for personal injuries. The plaintiff Dick Culwell claimed he was injured as the result of his tripping over a "chalk line" placed by the defendant, Abbott Construction Company, Inc., over a sidewalk leading into the Phillips County Hospital at Phillipsburg, Kansas. The case was tried to a jury which found in favor of the defendant. Most of the factual circumstances are not in dispute and are substantially as follows: The defendant, a building contractor, was engaged in construction work on the hospital building. The work involved a certain amount of excavating and the defendant's employees had placed a "chalk line" or nylon string across the sidewalk and running nearly the length of the building to mark the perimeter of the excavation work. The sidewalk led to the doors of the hospital on the north side. The plaintiff Culwell while using the sidewalk to enter the hospital tripped over the "chalk line" and fell against a portion of the building. The testimony was hotly disputed as to the color of the cord, its height above the sidewalk, its visibility to pedestrians, and the presence or absence of a warning barrier or sign to warn pedestrians using the sidewalk. There was evidence in the case both to establish and to negate negligence on the part of the defendant and contributory negligence on the part of the plaintiff. The nature and extent of the injuries which plaintiff suffered were also the subject of conflicting testimony. After two mistrials in Phillips County the venue of the third trial was changed to Rooks County. There the jury brought in a general verdict in favor of the defendant construction company. Having been denied relief the plaintiff Culwell brought a timely appeal to this court.

The plaintiff's principal claims of error on this appeal are based upon the refusal of the trial court to give certain instructions requested by the plaintiff. In his petition the plaintiff alleged three causes of action as a basis for recovery for his personal injuries. Count 1 alleged that plaintiff was injured as the result of the maintenance of a nuisance by the defendant. Count 2 sought recovery of punitive damages based upon a claim of willful and wanton negligence. Count 3 alleged a cause of action for compensatory damages based upon the negligence of the defendant's employees. In its answer the defendant Abbott Construction Company denied that it was maintaining a nuisance, denied that it was guilty of willful and wanton negligence, denied that it was guilty of ordinary negligence

and further alleged as an affirmative defense the contributory negligence of the plaintiff in failing to keep a proper lookout. At the pretrial conference the issue of willful and wanton negligence was eliminated from the case and is not involved on this appeal. One of the issues of fact stated in the pretrial order to be for trial was whether or not the fall of the plaintiff was the result of the maintenance of a nuisance by the defendant. The case proceeded to trial and at the close of the evidence the plaintiff requested an instruction to the jury on the theory that he was injured as the result of a nuisance maintained by Abbott Construction Company on the hospital premises. The trial court refused to submit the plaintiff's theory of a nuisance to the jury and restricted the consideration of the jury to the issues of defendant's negligence and plaintiff's contributory negligence.

The plaintiff's first point on this appeal is that the trial court erred in refusing to instruct the jury on the theory of nuisance as set forth in plaintiff's requested instruction No. 2. In support of his position the plaintiff contends that he was entitled to an instruction on the theory of nuisance since it was alleged in his petition and since it was one of the issues of fact set forth in the pretrial order to be tried by the jury. He relies principally on *Avey v. St. Francis Hospital & School of Nursing,* 201 Kan. 687, 442 P. 2d 1013, which holds that a party is entitled to an instruction which is essential to his theory of the case when there is sufficient evidence to support such theory. The defendant contends that the trial court did not err in its refusal to give an instruction on nuisance because the evidence did not warrant such an instruction. The basic question raised under point one is whether or not the evidence adduced at the trial was sufficient to support a theory of recovery based on nuisance so that the plaintiff was entitled to an instruction upon that theory.

Throughout the history of this state there has been an abundance of cases involving claims of injury based upon the maintenance of a nuisance. A reading of the nuisance cases in Kansas and other jurisdictions confirms the statement of Professor William L. Prosser that there is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance." (Prosser, Law of Torts, 4th Ed., Ch. 15, § 86, p. 571.) In his exhaustive work on the law of torts, Professor Prosser points out that the word "nuisance" has meant all things to all men, and that there is a general agreement that the word is incapable of any exact or comprehensive definition.

"Nuisance" in itself means no more than hurt, annoyance or inconvenience. Since the early period of the common law the word "nuisance" in the tort field has encompassed two separate but often overlapping concepts—private nuisance and public nuisance. Private nuisance historically has been and is a tort related to an unlawful interference with a person's use or enjoyment of his land. The concept of a private nuisance does not exist apart from the interest of the landowner. Hence a private nuisance is a civil wrong, based on a disturbance of some right or interest in land. The remedy for it lies in the hands of the individual landowner whose rights have been disturbed. (Prosser, Law of Torts, 4th Ed., Ch. 15, § 89, p. 591.)

The concept of a public nuisance developed as an entirely separate principle based upon an infringement of the rights of the state or the community at large. Public nuisance comprehends a miscellaneous and diversified group of minor criminal offenses based on some interference with the interests of the community, or the comfort or convenience of the general public. To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual or only a few. This distinction between private nuisance and public nuisance is also discussed in some depth in the introductory note to chapter 40 of the Restatement of the Law of Torts.

The decisions of this court have never clearly defined or distinguished the terms "private nuisance" and "public nuisance" except inferentially. There has been much intermingling of these concepts in our cases down through the years. We have stated on many occasions what constitutes a "nuisance." For example in our recent case of *Allen v. City of Ogden,* 210 Kan. 136, 499 P. 2d 527, we described a nuisance as follows:

"A nuisance is an annoyance, and any use of property by one which gives offense to or endangers life or health, violates the laws of decency, unreasonably pollutes the air with foul, noxious odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another may be said to be a nuisance." (Syl. ¶ 2.)

In *Caywood v. Board of County Commissioners,* 200 Kan. 134, 434 P. 2d 780, Mr. Justice Fromme summarized the Kansas cases, giving numerous examples of various uses of property which constituted a nuisance and other examples held not to constitute a nuisance. There was no attempt to differentiate between private nuisance and public nuisance. Many of these cases involved actions by the

owners of land for injunctive relief or to recover damages for some injury to the interest of the landowner. Other cases clearly involved public nuisances where the comfort or convenience of the general public was involved.

In *Klassen v. Creamery Co.*, 160 Kan. 697, 165 P. 2d 601, a private nuisance case, we recognized that the early common law regarded a nuisance only as an injury to some interest in land and that a legal remedy was given only to a person having some interest in land. In *Klassen* the right to recover damages for injury to the use and occupation of leased land was afforded to a tenant who suffered loss as a result of the pollution of his water by waste products from a creamery. Another typical example of an action based upon private nuisance is *Baldwin v. City of Overland Park*, 205 Kan. 1, 468 P. 2d 168, where the plaintiff sought recovery for damage to his property created by a flow of water from a drainage ditch maintained by the city of Overland Park.

As pointed out heretofore a public nuisance must affect an interest common to the general public rather than peculiar to one individual. Stated in another way, a public nuisance is one which annoys a substantial portion of the community. (*The State v. Coler*, 75 Kan. 424, 89 Pac. 693; *Delight Wholesale Co. v. City of Overland Park*, 203 Kan. 99, 453 P. 2d 82.) The earliest cases of public nuisance involved purprestures which were encroachments or obstructions on the public highway or some area of the public domain. Purprestures are held to be nuisances today. (*City of Russell v. Russell County B. & L. Assn.*, 154 Kan. 154, 118 P. 2d 121.) At common law a public nuisance was always a crime and punishable as such. Down through the years the concept of public nuisance has been broadly expanded to include a multitude of acts deemed inimical to public health, safety, comfort, peace, convenience or morals. Some examples of public nuisances are houses of prostitution, gambling dens, hog pens, illegal liquor establishments, indecent exhibitions, bullfights, unauthorized prize fights and the illegal practice of law and medicine.

The problem of distinguishing between public and private nuisances is further complicated by the fact that sometimes an individual may sustain an injury from a public nuisance which differs in kind from that sustained by the community in general. In that situation the injured citizen may maintain an action and recover damages for his particular injury. (*Venard v. Cross*, 8 Kan. 248.) Today it is uniformly held that a private individual has no action for

the invasion of a purely public right, unless his damage is in some way to be distinguished from that sustained by other members of the general public. It is not enough that he suffers the same inconvenience or is exposed to the same threatened injury as everyone else. In the absence of some peculiar individual injury redress for a public nuisance must be left to the appointed representatives of the community. (*School District v. Neil,* 36 Kan. 617, 14 Pac. 253.) The trouble is that once this rule is accepted the courts have not always found it easy to determine what is a sufficient "peculiar damage" to support the private action. Some rather fine lines have been drawn in the decisions. Where a plaintiff suffers personal injury or harm to his health as a result of a public nuisance, there is no difficulty in finding a different kind of damage which justifies an action by the individual plaintiff. This is the rationale of those cases where cities have been held liable for personal injuries caused by a public nuisance. (*Lehmkuhl v. City of Junction City,* 179 Kan. 389, 295 P. 2d 621.)

It should also be noted that a public nuisance may be a private nuisance as well when it interferes with an individual landowner's enjoyment of his land. This has served to muddle the problem. Professor Prosser points out another factor which causes confusion. Nuisance is a field of tort liability rather than a type of tortious conduct. Nuisance has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion. Professor Prosser concludes that the attempt frequently made to distinguish between nuisance and negligence, for example, is based entirely upon a mistaken emphasis based upon what the defendant has done rather than the result which has followed, and forgets completely the well-established fact that negligence is merely one type of conduct which may give rise to a nuisance. (Prosser, Law of Torts, 4th Ed., § 87, p. 573.) In other words a nuisance may result from conduct which is intentional or negligent or conduct which falls within the principle of strict liability without fault. The point is that nuisance is a result and negligence is a cause and they cannot be distinguished otherwise.

Keeping these principles in mind let us turn to the factual situation presented in the case at bar to determine whether or not the plaintiff may proceed against the defendant on the theory of *private* nuisance. We think it obvious that plaintiff cannot base his re-

covery on the theory of private nuisance since nowhere does it appear that he was injured in relation to a right which he enjoyed by reason of his ownership of an interest in land. The fact of personal injury alone is not enough to give rise to a claim of private nuisance. (Prosser, Law of Torts, 4th Ed., § 89, p. 591; *Mandell v. Pivnick*, 20 Conn. Sup. 99, 125 A. 2d 175; *Cox v. Ray M. Lee Co. Inc.*, 100 Ga. App. 333, 111 S. E. 2d 246; *Stanley v. City of Macon*, 95 Ga. App. 108, 97 S. E. 2d 330; *Lederman v. Cunningham*, 283 S. W. 2d 108, [Tex. Civ. App. 1955].)

We next consider the question whether or not plaintiff has a claim against the defendant based upon personal injuries suffered as the result of a *public* nuisance. On this point the plaintiff contends that the "chalk line" across the sidewalk was an obstruction of a public highway which materially interferred with its use by the public and therefore constituted a public nuisance. We have held on several occasions that whether or not in a given case a nuisance has been created depends on many factors, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its *frequency, continuity* or *duration*, and the damage or annoyance resulting, and each case must necessarily depend on its particular facts and circumstances. (*Lehmkuhl v. City of Junction City*, supra; *Steifer v. City of Kansas City*, 175 Kan. 794, 267 P. 2d 474; *Rose v. Board of Education*, 184 Kan. 486, 337 P. 2d 652; and *Grover v. City of Manhattan*, 198 Kan. 307, 424 P. 2d 256.)

We have no hesitancy whatsoever in holding that the "chalk line" across the sidewalk in the case at bar was not a public nuisance. In the first place obstructions of public streets or sidewalks of a temporary nature reasonably necessary for the improvement of private property or incidental to the proper use and enjoyment of the premises are not nuisances. (*Watson v. City of Topeka*, 194 Kan. 585, 400 P. 2d 689; *Tepfer v. City of Wichita*, 90 Kan. 718, 136 Pac. 317; *Longnecker v. Railroad Co.*, 80 Kan. 413, 102 Pac. 492; *Kansas City v. McDonald*, 60 Kan. 481, 57 Pac. 123.) Here the hospital was in the exercise of its rights in performing useful construction work on the hospital building and in having such work performed by the defendant construction company. It is undisputed in the evidence that "chalk lines," such as the one over which the plaintiff fell, are customarily used in the construction industry as a means of marking the boundaries of excavation work to be

performed. A "chalk line" is an accepted tool used by contractors to carry out contracts of public and private construction. In the second place the undisputed evidence shows that the "chalk line" had been in its position across the sidewalk only a short period of time during the day in which the plaintiff was injured. In a number of cases we have held that one of the requisites of a nuisance is that it has been in existence for some period of time rather than being an isolated instance of a temporary nature. Frequency, continuity and duration are distinguishing factors to be considered in determining whether or not a nuisance exists.

In *Rose v. Board of Education*, supra, a six-year-old boy brought suit to recover for personal injuries sustained when he stepped into hot burning coals resulting from the burning of a tree stump by school employees on the school playground. We held that the burning tree stump was not a nuisance because of a lack of continuity or duration. In *Grover v. City of Manhattan*, supra, the ten-year-old plaintiff was attacked and bitten by a coyote which had escaped from its enclosure at the city zoo and was running loose in the area frequented by visitors. We held that this was also an isolated instance of a temporary nature not falling within the definition of a nuisance under the decisions of this court. It was held that the facts presented only an ordinary negligence case.

When we apply the rationale of those cases to the case at bar, it is clear that the placing of the "chalk line" across the sidewalk did not constitute a public nuisance. The most that could be said for the situation is that the employees of the defendant Abbott Construction Company may have negligently and carelessly failed to provide sufficient warnings to pedestrians of the location of the "chalk line." Any right of recovery of necessity would have to be based on a theory of negligence alone. We hold that the trial court did not err in refusing to submit plaintiff's case to the jury on the theory of public nuisance.

The plaintiff urges as a second point on this appeal that the trial court erred in refusing to give plaintiff's requested instruction No. 6 which specifically set forth a duty of the defendant to place no cord across the sidewalk leading to the hospital without adequately guarding the same. We find no merit to this contention. It is obvious that the plaintiff's theory of recovery was fully covered by the instructions actually given by the court. In instruction No. 2 one of the issues to be determined by the jury was stated to be whether or not the defendant was negligent in maintaining the

cord across the sidewalk leading to one of the entrances to the hospital. In instruction No. 3 negligence was properly defined. In instruction No. 9 the duty of a contractor to use due care in the performance of construction work is fully covered, including the obligation to use appropriate signs and barriers to warn persons on the premises that the construction work is in progress. We have recognized the rule many times that instructions to a jury are to be considered as a whole and in their entirety, and each instruction is to be considered in connection with all other instructions in the case. (*Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593.) Here we find that the instructions given adequately covered plaintiff's theory and we find no error in the refusal of the court to give the specific instruction requested by the plaintiff on the same subject. As to liability the two issues presented to the jury were the negligence of the defendant and the contributory negligence of the plaintiff. The case could have gone either way. In bringing in a general verdict in favor of the defendant the jury resolved those issues against the plaintiff. We find no error in the instructions given by the trial court to the jury.

The plaintiff raises two additional points involving rulings in the reception of evidence. Counsel for plaintiff frankly concedes that the rulings of the court in this regard were matters within the trial court's sound discretion and that neither of these points could serve as a basis for reversal of the case. In view of this concession we are compelled to hold that the rulings of the trial court complained of did not constitute reversible error.

For the reasons set forth above the judgment of the district court is affirmed.